STATE EX REL. NEVILLE, RESPONDENT, *v.* MULLEN, APPELLANT.

(No. 4,939.)

(Submitted March 11, 1922. Decided April 5, 1922.)

[207 Pac. 634.]

*Intoxicating Liquors—Illegal Transportation—Seizure Without Warrant—Statutes—Construction—"Probable Cause."*

Intoxicating Liquors—Transportation—Seizure Without Warrant—Failure to Arrest Offender.
  1. Where a peace officer, proceeding under section 9 of Chapter 143, Laws of 1917, without a warrant seized intoxicating liquor being carried in a handbag, the offender was in no position on appeal from a judgment confiscating the property and ordering the liquor destroyed to complain that he had not been arrested or taken before a court or judge as required by that section.

Same—Transportation—Seizure Without Warrant—Procedure—Statutes.
  2. *Held,* that section 9 of Chapter 143, prescribing the method of procedure for the arrest of one illegally transporting intoxicating liquor and seizure thereof, where the offense is committed in the presence of an officer, was not by necessary implication superseded by section 26 of Chapter 9, Laws Extra Session 1921.

Same—Amendments of Statute—Supplemental Legislation—Statutes Construed Together.
  3. Chapter 9, Laws of Extraordinary Session of 1921, amendatory of Chapter 143, Laws of 1917, must be construed as supplemental to and read with the latter Chapter as constituting one general legislative plan for the enforcement of the Prohibition Act.

Statutes and Statutory Construction—Supplementary Statutes.
  4. Supplementary statutes include every species of amendatory legislation which goes to complete a legislative scheme.

Intoxicating Liquors — Transportation — Seizure Without Warrant — Statute Applicable.
  5. *Held,* that section 26, Chapter 9, Extraordinary Session Laws of 1921, authorizing an officer to seize intoxicating liquor discovered

by him while being conveyed, in a wagon, automobile, *etc.*, or "other vehicle," has no application to a case where the liquor seized was being carried in a handbag, the words "other vehicle" being limited in their meaning to the same general character of vehicles as those particularly enumerated in the section.

Same—Transportation—Seizure—Proceeding *in Rem.*
6. The proceeding authorized by section 9, Chapter 143, Laws of 1917, under which an officer may without a warrant arrest an offender against the liquor laws and seize the liquor, *etc.*, is one *in rem* and independent of any criminal prosecution for the violation of such laws.

Same—Return of Property—Rule of Samlin Case Held Inapplicable.
7. The rule declared in *State ex rel. Samlin* v. *District Court*, 59 Mont. 600, that intoxicating liquor, *etc.*, seized under a void search-warrant must be suppressed as evidence and returned to the owner when, in a direct proceeding instituted prior to the hearing to test the validity of the process, it is made to appear that the articles were seized unlawfully, *held* inapplicable to the instant case.

Same—Seizure Without Warrant—"Probable Cause."
8. To authorize the seizure of intoxicating liquors under section 9, Chapter 143, Laws of 1917, by an officer where the offense is committed in his presence, he need not have actual, personal knowledge that the law is being violated, it being sufficient if he have probable cause, *i. e.*, knowledge of facts, actual or apparent, strong enough to justify a reasonable man that he has lawful grounds for the belief that the law is being violated to proceed without a warrant.

Same—Seizure Without Warrant—Probable Cause—Sufficiency.
9. Under the above rule (par. 7) *held,* that where a sheriff at the time he seized liquor being carried in a handbag from which protruded the top of a demijohn knew that a banquet was being given at a hotel where persons were under the influence of intoxicating liquor and had been informed that the offender was conveying whisky to his employer at the hotel, he was warranted in seizing it without a search-warrant. (MR. JUSTICE GALEN dissenting.)

*Appeal from District Court, Powell County; Geo. W. Winston, Judge.*

PROCEEDING by the State, on the relation of J. E. Neville, Sheriff, against Lewis Mullen and certain intoxicating liquors. From a judgment ordering the liquors destroyed, Mullen appeals. Affirmed.

*Mr. C. A. Spaulding* and *Mr. W. E. Keeley*, for Appellant, submitted a brief; *Mr. Spaulding* argued the cause orally.

It is the position of appellant that section 26 of Chapter 9, Laws of 1921, providing, as it does, a complete method of

8. Constitutional guaranties against unreasonable searches and seizures as applied to search for or seizure of intoxicating liquor, notes, 3 A. L. R. 1514; 13 A. L. R. 1316.

dealing with liquors and other property seized without a warrant, either upon an unlawful possession or an unlawful transportation, is the statute controlling this proceeding because it is of later enactment than Chapter 143, Laws of 1917, and therefore supersedes the latter so far as it in any respect differs therefrom.  But even if it does not supersede the Act of 1917, the Act of 1921 is by the express terms of section 39 thereof made "supplemental to and a part of" the Act of 1917.  If it is supplemental to and a part of such Act of 1917, such additional provisions as are found in the Act of 1921 are now a part of the Act of 1917 to the same extent as if originally incorporated therein.  We have, then, two distinct Acts of the legislative assembly, one by direct enactment and the other by making the direct enactment supplemental to and a part of the Act not containing it, providing that property seized without a warrant cannot be forfeited until the person having it in his possession when seized has been prosecuted and convicted.  That this provision of the statute is vital to the present proceeding is apparent when it is considered that from such conviction the destruction of the liquor and the sale of the other property seized follows without any further trial or adjudication.  The fact of conviction authorizes the destruction and sale.  So declares the statute.  The language of section 26 of the Act of 1921 is: "The court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized."  This being the law, no legal destruction nor sale could be ordered without such a conviction.  (*J. D. Iler Brewing Co.* v. *Campbell*, 66 Kan. 361, 71 Pac. 825.) .

Did the court below err in not ordering the return of this property to appellant upon his verified demand therefor?  The court below, as above indicated, being without authority to enter a judgment forfeiting the property seized until appellant had been criminally complained against and convicted, there could be no warrant or justification in law for directing

the sheriff to retain possession of the property after demand
had been made for its return.   At the time of that demand
there was no criminal proceeding pending against appellant for
a violation of the law pertaining to intoxicating liquors, and
apparently none contemplated, for none was ever commenced.
Such a violation of the law by him constituted, under the
statute, the sole basis of a right to seize his property in the
first instance, consequently the pendency of a criminal pro-
ceeding against him for such violation constituted the sole
basis of a right to continue to hold possession after seizure.   In
view of the mandatory language of the statute that when the
property is seized the person possessing it must be arrested
and thereupon the sheriff must "at once" proceed against
him "in any court having competent jurisdiction," there could
be no legal justification for continuing to hold property so
seized if such a prosecution had not been instituted.   If the
foregoing is not logically and statutorily sound, one's property
is at the mercy of an officer who sees fit to seize it and in-
definitely retain possession of it.   It follows that the judgment
of this court should be not only that the judgment of the
lower court is annulled, but also that appellant's property be
restored to him.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A.
Foot,* Assistant Attorney General, for Respondent, submitted
a brief; *Mr. Foot* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

On the night of April 30, 1921, the sheriff of Powell county
met the defendant Mullen in an alley in the city of Deer
Lodge, carrying a handbag from which protruded the top of a
demijohn, the demijohn containing two gallons of intoxicating
liquor.   The sheriff without a warrant seized the handbag and
the demijohn and its contents, and on May 2 filed a complaint
charging the transportation of intoxicating liquor in violation

of law and made return, setting forth a particular description of the liquor and property seized and of the place where seized. A warrant was thereupon issued and delivered to the sheriff, commanding him to retain possession of the seized property until discharged by process of law. At the same time the court entered an order fixing the time and place for hearing and a citation directed to the defendant was issued and served. Prior to the hearing, defendant filed his verified claim of ownership of the property and demanded a return, but at the hearing failed to offer any evidence in support of his claim. Upon the hearing the state offered its evidence and thereafter a judgment was duly given and made confiscating the property, ordering the liquor destroyed and the handbag and demijohn sold. From that judgment this appeal is prosecuted.

The defendant was not arrested or tried, and it is contended that the district court erred in entering judgment forfeiting the property before the defendant was convicted of violating the law.

Chapter 143, Laws of 1917, is known familiarly as the [1-4] Prohibition Enforcement Act. Several sections of that Act were repealed and other changes in the law effected by Chapter 9, Laws of the Extraordinary Session of 1921. Speaking in general terms, Chapter 143 provides two distinct methods of procedure, one applicable to cases in which the enforcement officer has probable cause for believing that the liquor laws are being violated, though not in his presence, and the other applicable to cases in which the law is being violated in the presence of the officer. Section 7 provides that in instances of the first class a complaint shall be made, a search-warrant issued, a search made and the warrant with the officer's return filed. Section 8 designates the procedure then to be followed. Section 9 provides for cases of the second class. It requires the officer, without a warrant, to arrest the offender and seize the liquor, vessels, fixtures and appurtenances, to take the offender before the court or judge, make complaint

charging the offense committed and furnish a particular description of the liquor and property seized and of the place where the same were seized. Thereupon the court or judge shall cause a warrant to issue directing the officer to hold in his possession the seized property until it shall be discharged by process of law. The procedure shall then conform to the provisions of section 8.

The present proceeding was instituted and prosecuted upon the theory that there was presented a case of a violation of the law in the presence of the officer, and though there was not a literal compliance with the terms of the statute, the defendant cannot complain that he was not arrested or taken before the court or judge. Aside from this dereliction of duty on the part of the officer, there was a substantial compliance with the provisions of sections 8 and 9 of Chapter 143 above. Neither section 8 nor section 9 was repealed in terms by Chapter 9, Laws of 1921; but it is the contention of the defendant that, by necessary implication, section 9 was superseded by section 26 of the later Act. Section 26 provides: ''When any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported *or possessed* illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this Act in any court having competent jurisdiction; * * * The court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized,'' *etc.* The words ''or possessed'' in the second sentence of this section are apparently meaningless and

were inserted inadvertently. The section deals exclusively with the unlawful transportation of intoxicating liquors by means of a wagon, buggy, automobile, water or air craft or other vehicle and under the rule of statutory construction universally applied by courts, the general terms "or other vehicle" are to be limited in their meaning to designate vehicles of the same general character as those particularly enumerated (*Helena Light & Ry. Co.* v. *City of Helena,* 47 Mont. 18, 130 Pac. 446), and this was manifestly the intention of the legislature as the most cursory reading of the section will indicate. Under this construction it is apparent at once that section 26 has no application to such a state of facts as here presented and that it is not irreconcilable with the provisions of section 9 of Chapter 143.

Section 39 of Chapter 9, Laws of 1921, declares that "except as herein otherwise specified, this Act shall be construed as supplemental to and a part of all laws of this state relating to intoxicating liquors." In other words, the legislature declared that after the particularly enumerated changes in prior laws had been effected, Chapter 9 should then be construed as supplemental to and a part of the remaining statutes dealing with this subject, and this declared purpose the courts are not [5] at liberty to disregard. "Supplemental statutes include every species of amendatory legislation which goes to complete a legislative scheme." (*First State Bank* v. *Bottineau County Bank,* 56 Mont. 363, 8 A. L. R. 631, 185 Pac. 162.) Construed according to the manifest intention of the legislature, Chapter 9, Laws of 1921, is to be read with Chapter 143, Laws of 1917, as constituting one general legislative plan; and since there is not any irreconcilable conflict between the provisions of section 9 of the one Act and section 26 of the other, each is to be given full force and effect.

Prior to the enactment of Chapter 9, Laws of 1921, a statute substantially in the language of section 9 of Chapter 143, Laws of 1917, had been held to be not sufficiently comprehensive in its terms to authorize the seizure of an automobile or other

like vehicle used in the unlawful transportation of intoxicating liquors (*One Cadillac Automobile* v. *State* (Okl.), 172 Pac. 62), and apparently it was the purpose of our legislative assembly in enacting section 26 of Chapter 9 above, to broaden the scope of the laws and avoid the conclusion reached in the [6] Oklahoma case. This proceeding, warranted by section 9, Chapter 143, is *in rem* and altogether independent of any criminal prosecution for a violation of the liquor laws. (*State* v. *Kelly,* 57 Mont. 123, 187 Pac. 637; *State* v. *Nielsen,* 57 Mont. 137, 187 Pac. 639.) We need not determine the character of the proceeding authorized by section 26 of Chapter 9.

Again, it is contended that the trial court erred in refusing [7] to order the liquor, container and handbag returned to the defendant upon his written demand therefor, seasonably made, and the decision of this court in *State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362, is invoked in this behalf. In the *Samlin Case* we went no further than to hold (1) that a search-warrant issued upon a complaint or affidavit which does not set forth any facts showing, or tending to show, probable cause, is void, and (2) that articles seized by virtue of such warrant should be suppressed as evidence and returned to the owner whenever, in a direct proceeding instituted prior to the hearing to test the validity of the process, it is made to appear that the articles were seized unlawfully. That case has no application to the facts here presented. There is not a suggestion in the record that the articles in question were seized or held as evidence. In the *Samlin Case,* the property was ordered returned to the possession of the owner only as an incident to his right to have it suppressed as evidence. We do not mean to intimate that one whose property is seized in a proceeding of this character cannot contest the officer's right to its possession, but only hold that the *Samlin Case* does not authorize the inquiry.

Prior to the hearing, defendant moved the court to quash [8] the proceeding upon the ground, among others, that the complaint and sheriff's return of the articles seized dis-

closed that there was not any violation of law in the presence of the officer, and this notwithstanding that the complaint recites that the defendant was unlawfully transporting intoxicating liquors in the presence of the officer. It is the contention of counsel for the defendant that from the very nature of the case the sheriff did not know, and could not know, that the demijohn contained intoxicating liquor at the time the articles were seized or until after seizure and an examination of the contents of the container, hence, the seizure was unlawful. As we understand this contention, it is that to authorize a seizure under section 9, the officer must have actual, personal knowledge that the acts of the alleged offender constitute a violation of the liquor laws, and, if counsel are correct, then the arrest and seizure provision of section 9 becomes a dead letter; for under practically any conceivable circumstances it would be impossible for the officer to have such knowledge. Section 9 imposes upon the sheriff the duty to arrest the offender and seize the contraband articles without a warrant whenever a violation of the liquor laws occurs in his presence. The right to seize without process is thus made co-extensive with the right to arrest without a warrant, and the authority to arrest without a warrant is conferred in the same terms as is the like authority given to any peace officer by section 11753, Revised Codes of 1921, so that we may properly determine the scope of the officer's authority to seize under section 9 by determining the scope of his authority to arrest without a warrant. Whatever else may be said upon that subject, the utmost that can be exacted of the officer who arrests without a warrant is that the circumstances shall be such that upon them alone he would be justified in making a complaint upon which a warrant might issue. In other words, if the circumstances are such that the officer could properly secure a warrant of arrest, he may arrest without a warrant if the offense which the circumstances tend to establish was committed in his presence; and it is settled in this jurisdiction that the officer need not have actual, personal knowledge of the facts which constitute the

offense in order to be able to make complaint and secure a warrant. The question was settled in *State* v. *McCaffery,* 16 Mont. 33, 40 Pac. 63, wherein the court said: "It seems to us that the proper construction of the words 'probable cause' as used in the Constitution may be facts embodied in a complaint which charges the offense upon information and belief." The doctrine of that case was expressly approved in *State* v. *Shafer,* 26 Mont. 11, 66 Pac. 463.

Reverting to our premise that the sheriff may arrest without a warrant upon such state of facts as would justify the issuance of a warrant, it becomes necessary to consider what circumstances will justify the issuance of a warrant, and the authorities are unanimous in holding that there must be probable cause. The terms "probable cause" are variously defined, but an analysis of the definitions will disclose that the difference, if any, is in the mode of expression, rather than in the substance. "Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." (*Burt* v. *Smith,* 181 N. Y. 1, 2 Ann. Cas. 576, 73 N. E. 495.) "Probable cause for a criminal prosecution is, in effect, the concurrence of the belief of guilt with the existence of facts and circumstances reasonably warranting the belief." (*Runo* v. *Williams,* 162 Cal. 444, 122 Pac. 1082.) "It is not essential to probable cause for an arrest that the accuser believe that he had sufficient evidence to procure a conviction." (*Michael* v. *Matson,* 81 Kan. 360, L. R. A. 1915D, 1, 105 Pac. 537.) "Probable cause * * * does not depend on the actual state of the case in point of fact, for there may be probable cause for commencing prosecution against a party although subsequent developments may show his absolute innocence." (*Mundal* v. *Minneapolis & St. L. R. Co.,* 92 Minn. 26, 99 N. W. 273.) "The expression 'probable cause,' as used in the federal Constitution referring to the issuance of warrants, means that there is a probability that a crime has been committed by the

person named in the warrant." (*Ex parte Heacock,* 8 Cal.
App. 420, 97 Pac. 77.)

In *Burt* v. *Smith,* above, the New York court said: "One
may act upon what appears to be true even if it turns out to
be false, provided he believes it to be true and the appearances
are sufficient to justify the belief as reasonable. Belief alone,
however sincere, is not sufficient, for it must be founded on
circumstances which make the belief reasonable." The same
rule as applied to an arrest without warrant is stated in 5
C. J. 417, as follows: "The reasonable and probable grounds
that will justify an officer in arresting without a warrant
one whom he suspects of felony must be such as would actuate
a reasonable man acting in good faith. The rule is substan-
tially the same as that in regard to probable cause in actions
for malicious prosecution, and there is no difference in its
application between arrests for felonies and arrests for mis-
demeanors. The necessary elements of the grounds of suspi-
cion are that the officer acts upon a belief in the person's
guilt, based either upon facts or circumstances within the
officer's own knowledge, or upon information imparted to him
by reliable and credible third persons, provided there are no
circumstances known to the officer sufficient to materially im-
peach the information received. It is not every idle and
unreasonable charge which will justify an arrest. An arrest
without a warrant is illegal when it is made upon mere sus-
picion or belief, unsupported by facts, circumstances or cred-
ible information calculated to produce such suspicion or
belief." (See, also, Words & Phrases, Second Series, 1224
*et seq.*)

The record before us discloses these facts: At the time
[9] of the seizure the sheriff knew that a banquet was being
given in the Hotel Deer Lodge and that some of the persons
present showed the effects of having been drinking intoxicating
liquors. It was about 9:30 of the evening of April 30 while
the banquet was in progress, and defendant was in an alley
immediately west of the hotel. He was carrying the demijohn

which was encased in a wicker cover and only partially concealed in the handbag. The defendant was then and for a long time prior thereto had been in the employ of one of the persons attending the banquet and was then acting as such employee, and the sheriff had been informed that he was transporting liquor to deliver it to his employer or to some other person at the banquet. We need not stop to consider whether this evidence would be sufficient to convict the defendant in a criminal action. It is only necessary to determine whether the sheriff had probable cause to believe that the law was being violated, and we have no hesitation in saying that the facts and circumstances were sufficient to justify him in making complaint and securing a warrant for the arrest of Mullen, and if the warrant had been secured and the arrest had been made, the right of the sheriff to seize the liquor and container and retain them as evidence against the accused could not be gainsaid. (*Kneeland* v. *Connally,* 70 Ga. 424; *State* v. *Hassan,* 149 Iowa, 518, 128 N. W. 960; note to *State* v. *Mausert,* L. R. A. 1916C, 1017.) Speaking upon the subject, the supreme court of Maine said: ''It is well settled that an officer making an arrest upon a criminal charge may also take into his possession the instruments of the crime and such other articles as may reasonably be of use as evidence upon the trial. The officer not only has the lawful power to do so, but he would be blameworthy if he failed to do so. The maintenance of public order, and the protection of society, by efficient prosecution of criminals, require it. The title to the property remains in the owner, but the lawful possession is temporarily in the officer for evidentiary purposes, subject to the order of the court.'' (*Getchell* v. *Page,* 103 Me. 387, 125 Am. St. Rep. 307, 18 L. R. A. (n. s.) 253, 69 Atl. 624.) The question of unreasonable search is not involved. (*State* v. *Quinn,* 111 S. C. 174, 3 L. R. A. 1500, 97 S. E. 62.) There was not any occasion for the sheriff to procure a search-warrant. The defendant was openly transporting the articles in the immediate presence of the officer.

Having determined that the circumstances would have justified the sheriff in making complaint against Mullen and in securing a warrant for his arrest, it follows from what has been said that he would have been justified in arresting defendant without a warrant, and since his authority to seize the articles without process was coextensive with his authority to arrest without a warrant, the seizure was not unlawful, and the motion to quash was properly overruled.

There does not appear to be any reversible error in the record, and the judgment is affirmed.

*Affirmed.*

Mr. Justice Charles H. Cooper and Honorable H. H. Ewing, District Judge, sitting in place of Mr. Justice Reynolds, disqualified, concur.

Mr. Chief Justice Brantly concurring: I concur in the conclusion reached by Mr. Justice Holloway, but in doing so do not wish to be understood as giving my assent, even by implication, to the proposition that an arrest may be made without a warrant in any case where the facts and circumstances, independently of those discovered through the arrest, are not sufficient to produce in the mind of the arresting officer a conviction, which amounts to a practical certainty, that he is witnessing, at the time, the commission of a public offense. In other words, mere suspicion founded upon hearsay evidence only, however trustworthy in source, without personal observation by the officer of occurrences actually taking place at the time, which, in themselves, indicate that an offense is being committed, does not justify an arrest or seizure. To recognize any other rule would authorize the officer to arrest upon a bare suspicion not supported by the actual existence of facts and circumstances which, in the mind of a reasonable person, point to the commission of an offense; and it must not be overlooked that the provision of the Constitution prohibiting unreasonable searches and seizures (Constitution, sec. 7, Art. III) makes no distinc-

tion between persons and property, and the seizure of either without warrant must be justified by the facts. On the other hand, the announcement of a rule which would deny the right to make an arrest in all cases except upon personal knowledge of the officer, would render it well nigh impossible to enforce the prohibition, the anti-gambling and other similar laws enacted to suppress crimes which from their nature are generally committed in secret. It is not understood that anything said by Mr. Justice Holloway is contrary to my view. No rule can be laid down applicable to all cases. The arrest or seizure must be justified by the circumstances disclosed by the facts in each case. The facts found by the trial court in this case were not entirely satisfactory, but after a careful examination and analysis of them, I am not willing to say that they were wholly insufficient to justify the seizure.

MR. JUSTICE GALEN dissenting: I dissent. That which is said in the majority opinion respecting the construction of the provisions of the Act of 1921 (Chap. 9, Laws Extra Session 1921) as additions to and supplementary to the unrepealed provisions of the Act of 1917 (Chap. 143, Laws 1917) meets with my approval. (*State* v. *Bowker, ante,* p. 1, 205 Pac. 961.) However, I do not and cannot agree to the latter portion of the opinion, holding in effect that a sheriff or other peace officer is authorized upon *suspicion* to arrest a person carrying a grip or satchel and examine the contents thereof without either a warrant of arrest or a search-warrant. Such· holding has no place under our theory of government. It is violative of the foundation principles establishing the freedom of the Anglo-Saxon race as embraced in the Magna Charta exacted of King John by the people at Runnymede, July 15, 1215, section 38 of which provides: "No bailiff from henceforth shall put any man to his law upon his own bare saying without creditable witnesses to prove it." In its tendency it is destructive of the Bill of Rights for which our forefathers fought so valiantly and successfully in the Revolutionary War.

It invades the well-recognized principles of a free government
and the constitutional guaranties of freedom of the people, of
which we have been so justly proud since our success in breaking the shackles by which we were held by Great Britain
prior to 1781. It disregards the constitutional guaranty of
both the federal and the state Constitutions. The Fourth
Amendment to the Constitution of the United States provides:
"The right of the people to be secure in their persons, houses,
papers, and effects, against unreasonable searches and seizures,
shall not be violated, and no warrant shall issue but upon
probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or
things to be seized." And section 7 of Article III of the Constitution of Montana provides: "The people shall be secure in
their persons, papers, homes, and effects, from unreasonable
searches and seizures, and no warrant to search any place or
seize any person or thing shall issue without describing the
place to be searched, or the person or thing to be seized,
nor without probable cause, supported by oath or affirmation,
reduced to writing."

If such invasion of the personal rights and liberties guaranteed to the people be given sanction by the judicial department of this state, it is, in my opinion, a distinct and
far-reaching backward step tending to destroy our much
boasted of and said to be carefully guarded liberties. Reform
measures are unobjectionable, but the vigor, ardor and arguments of their advocates should not induce the court on any
theory to disregard or avoid the constitutional guaranties of
our people. The Constitution applies with equal force to
crimes committed against the prohibition laws; its guaranties
are equally sacred and inviolate as to all crimes, and no exception or distinction should be made as respects laws for the
enforcement of prohibition. The rule enunciated by the majority is not consistent with the holding of the entire court
in the *Samlin Case* (*State ex rel. Samlin* v. *District Court,* 59
Mont. 600, 198 Pac. 362), for if a peace officer is authorized

in apprehending and searching a man's person under *suspicion,* why not his house? I cannot draw the fine distinction made by the majority between the two cases. The doctrine laid down in the *Samlin Case* is, in my opinion, correct and unanswerable when applied in this instance. It was there said by Mr. Chief Justice Brantly, speaking for the court, as follows: "Speaking of the Fourth Amendment to the Constitution of the United States, Mr. Justice Day, in *Weeks* v. *United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341 (see, also, Rose's U. S. Notes), said: 'The effect of the Fourth Amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.' This forceful statement of the learned justice applies as well to the guaranty found in our own Constitution; for, except that the order in which the several clauses in it are arranged is different, it is expressive of the same fundamental principles and was intended to be equally as effective to prevent an invasion of the rights of the citizen of the state under the guise of the law by the state government or any of its officers. Since it was intended to

63 Mont.—5

take away from the legislature the power to authorize an invasion of the rights of the citizen by a search of his home or a seizure of his person or property in any other case than it permits, it is to be strictly construed in his favor. On this subject the eminent author, Mr. Cooley, in his work on Constitutional Limitations, has this to say: 'For the service of criminal process, the houses of private parties are subject to be broken and entered under circumstances which are fully explained in the works on criminal law, and need not be enumerated here. And there are also cases where search-warrants are allowed to be issued, under which an officer may be protected in the like action. But as search-warrants are a species of process exceedingly arbitrary in character, and which ought not to be resorted to except for very urgent and satisfactory reasons, the rules of law which pertain to them are of more than ordinary strictness; and if the party acting under them expects legal protection, it is essential that these rules be carefully observed. In the first place, they are only to be granted in the cases expressly authorized by law; and not generally in such cases until after a showing made before a judicial officer, under oath, that a crime has been committed, and that the party complaining has reasonable cause to suspect that the offender, or the property which was the subject or the instrument of the crime, is concealed in some specified house or place. And the law, in requiring a showing of reasonable causes for suspicion, intends that evidence shall be given of such facts as shall satisfy the magistrate that the suspicion is well founded; for the suspicion itself is no ground for the warrant except as the facts justify it.' " (Page 429.)

In the *Samlin Case* we held that a search-warrant issued upon an affidavit alleging merely that the affiant "has probable cause to believe and does believe" intoxicating liquors are unlawfully possessed in certain premises described, is not sufficient to authorize the issuance of a search-warrant, being violative of section 7 of Article III of our Constitution; that

to authorize the issuance of a search-warrant, sworn facts
and circumstances must be made to appear to the judge
upon which he may act judicially in determining whether or
not it is a proper case for the issuance of a warrant. In my
opinion, the doctrine laid down in the majority opinion sub-
stitutes the judgment of the sheriff or peace officer for that
which is expressly lodged in a court or judicial officer under
constitutional and statutory provisions as held in the *Samlin
Case.* To say the least, it seems to me utterly inconsistent
to hold in the one instance that the sheriff or peace officer
must secure a search-warrant in order to enter and search
any place, which warrant will be issued only upon sworn
statements of facts and circumstances showing probable cause,
rather than upon bald assertions or conclusions, the judge
alone being vested with the prerogative of determination from
the facts presented whether probable cause exists for the issu-
ance of a search-warrant; and in the other, by the decision in
the present case, that the sheriff or peace officer has the inde-
pendent right of determining facts and circumstances deemed
sufficient probable cause for the arrest of a person suspected,
and a seizure and examination of his personal effects, without
a warrant, thus clothing him with judicial functions.

"To thus limit the power of a peace officer makes difficult
the enforcement of a law whose strict enforcement is undoubt-
edly a matter of grave public policy; but this is far better,
in the final analysis, than the establishment and encourage-
ment of a practice which would dishonor and transcend the
basic and fundamental principles of our constitutional form
of government." (*State* v. *One Hudson Automobile,* 190
N. Y. Supp. 481, 116 Misc. Rep. 399; *People* v. *738 Bottles
of Intoxicating Liquor,* 116 Misc. Rep. 252, 190 N. Y. Supp.
477.)

Upon the state of facts presented, "the seizing officer was
nothing but a trespasser acting in open violation of law, and
the trial court should have, on ascertaining the facts, ordered
the seizing officer to return the property to the claimant, and

a judgment of forfeiture entered under such a proceeding is absolutely null and void.

"The function of the courts of this country is to enforce a government of laws, and not a government of men. The final arbiter in all cases presented to appellate courts is the substantive law as controlled, limited, and regulated by the written law (meaning by the written law, the federal and state Constitutions, and the statute law enacted in accordance with the Constitutions). When an appellate court abandons the law as thus defined, it puts its ear to the ground to determine what is popular and what will or will not please the popular will. Such a court is then treading near a precipice that may engulf this government in anarchy. Such a court has broken with the law and the accepted wisdom of the ages and is accepting in lieu thereof the rule of the popular will, and this is only a euphonious name for mob law and means nothing else but mob law in its final analysis. Between these two positions there can be no halting of the ways if we are to save our government from confusion and ultimate anarchy.

"We know of no court or judge that has openly and specifically committed itself to a rule of men in lieu of a rule of law. This does not mean that the courts are opposed to progress or change, but does mean that the courts are irretrievably committed to the propositions that, when these changes come, they must be changes in accordance with the fixed rules of law providing for such changes, and not by ignoring, overriding, and disregarding the legal methods providing for such changes." (*Hess* v. *State* (Okl.), 202 Pac. 310.)

The passage of the prohibition amendment to the federal Constitution did not inaugurate a reign of legislative despotism to be carried out by snooping constables or peace officers, as to them may seem expedient. The Constitution was amended, not abrogated, and searches and seizures are to be made to-day as yesterday, according to the law of the land.

I do not believe that my learned and worthy associates fully appreciate the importance of the principle laid down in this decision. To my mind, it knocks at the very foundation of guaranteed constitutional rights of the people, and I feel that I should be derelict in the performance of my duty were I not to voice emphatic protest. Under this decision, every person who carries a container for liquids may be subjected to an invasion of personal rights and privileges—the messenger who flies from the dairy with pasteurized product of the cow, in basket or bottle, to the infant in the nursery, as well as the druggist clerk who carries a demijohn or flask which cheers the expiring moments of the sick or aged on their hospital cots. My brothers at the bar had best discard their green bags and portfolios for fishnets, in order to avoid inquisitive constables attracted by a bulging bag, from mussing their papers while forcing an inspection.

The learned trial judge was in far better position, after the hearing and examination of the exhibits, to make determination of probable cause for the arrest of the defendant and the seizure of the grip and contents than the sheriff could possibly have been at the time of the arrest. The sheriff could only suspect and surmise, but the judge found, among other facts, that the handbag "contained one two-gallon demijohn full of whisky of an excellent quality and not of the moonshine variety." It is not clear from the record, however, upon just what proof this judicial determination was made.

The record discloses that the defendant appeared by motion to quash the proceedings and made timely formal demand for the return of the property seized, asserting that the seizure made by the sheriff was wrongful, unlawful, without and in excess of jurisdiction. In my opinion the motion should have been sustained, the proceeding dismissed and the property returned to the defendant, having been unlawfully taken from his possession.

Rehearing denied June 12, 1922.