STATE EX REL. KUHR, RELATOR, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 6,326.)

(Submitted May 1, 1928. Decided June 12, 1928.)

[268 Pac. 501.]

*Writ of Supervisory Control—Criminal Law—Narcotics—Illegal Possession—Arrest—Searches and Seizures—Constitutional Law — Suppression of Evidence — When Refusal Proper.*

Arrest—When Officer may Arrest Without Warrant.
  1. A peace officer may arrest without a warrant if the circumstances are such that upon them alone he would be justified in making a complaint upon which a warrant might issue, and in doing either he need not have personal knowledge of the facts constituting the offense, it being sufficient if he acts upon information imparted to him by a credible third person, there being

---

1. Right of policeman to arrest without warrant, see note in 84 Am. St. Rep. 682. See, also, 3 Cal. Jur. 116; 2 R. C. L. 450.

no circumstances known to the officer materially impeaching such information.

**Same—On Lawful Arrest Officer may Take Articles in Possession of Person Arrested to be Used on Trial.**
2. Where an arrest is lawfully made, the arresting officer may take charge of any article in the possession of the person arrested which may reasonably be of use on the trial.

**Same — Circumstances Under Which Officer Justified in Arresting Addressee of Package of Morphine on Information by Federal Officers Without Warrant and Seizing Drug.**
3. Under the above rules *held,* that where a sheriff was informed by a federal customs inspector who had been consulted by a postmaster with respect to a package which had been opened by the latter and found to contain morphine, he had reasonable cause for believing that the addressee was committing a felony when she was leaving the postoffice in possession of the package and justified in arresting her without a warrant and in taking possession of and holding the package as evidence.

**Narcotics—Mere Possession Prima Facie Evidence of Guilt—Lack of Knowledge of Contents of Package Seized is Matter of Defense.**
4. Under section 3200, Revised Codes 1921, the mere possession of narcotics is prima facie evidence of guilt and therefore lack of knowledge, on the part of the recipient of a package through the mails, that it contained morphine did not render her arrest unlawful, her lack in that respect being a matter of defense at the trial.

**Searches and Seizures—Against Whom Provisions of Federal and State Constitutions Directed — Suppression of Evidence—Refusal, When Proper.**
5. As the provision of the federal Constitution against unreasonable searches and seizures has no application to state officers, so that of the state Constitution cannot be invoked against independent action by federal officers or private persons; hence where, after the constitutional rights of a person charged with illegal possession of morphine had been violated by federal officers in opening a package sent through the mails containing the drug, a sheriff arrested the addressee and seized the package on information imparted to him by such officers as to its contents, but not in co-operation or collusion with them, his seizure in that mode did not render the package inadmissible in evidence as made in contravention of the section of the state Constitution against unreasonable searches and seizures, and the court in suppressing it committed error.

---

[1] Arrest, 5 C. J., p. 418, n. 6.
[2] Arrest, 5 C. J., p. 434, n. 89.
[3] Arrest, 5 C. J., p. 417, n. 5.
[5] Criminal Law, 16 C. J., p. 571, n. 93. Searches and Seizures, 35 Cyc., p. 1269, n. 41.

2. Right to search person and habitation of one under arrest for crime, see note in 3 Ann. Cas. 354. See, also, 2 R. C. L. 467, 468. Right of officer in executing criminal process to take possession of evidentiary articles, see notes in 18 L. R. A. (n. s.) 253; L. R. A. 1916C, 1017. See, also, 2 R. C. L. 467, 468.

5. Admissibility of evidence obtained by illegal search and seizure, see notes in 94 Am. St. Rep. 345; 15 Ann. Cas. 1205; Ann. Cas. 1915C, 1182; 24 A. L. R. 1408; 32 A. L. R. 408; 41 A. L. R. 1145; 59 L. R. A. 466; 8 L. R. A. (n. s.) 762; 34 L. R. A. (n. s.) 58; L. R. A. 1915B, 834; L. R. A. 1916E, 715. See, also, 8 Cal. Jur. 78; 8 R. C. L. 196; 24 R. C. L. 718.

APPLICATION by the state on the relation of Max P. Kuhr, County Attorney of Hill County, against the District Court of the Eighteenth Judicial District of the State of Montana in and for the County of Hill and Charles A. Rose, Judge thereof, for writ of supervisory control, to annul an order suppressing evidence in a pending criminal case. Order suppressing evidence annulled.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. Max P. Kuhr,* County Attorney for Hill County, for Relator, submitted a brief; *Mr. Choate* and *Mr. Kuhr,* argued the cause orally.

*Mr. Victor R. Griggs,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On application of Max Kuhr, county attorney for Hill county, this court issued an alternative writ of supervisory control to the district court of Hill county and the judge thereof, commanding the respondents to show cause on May 1, 1928, if any they had, why an order of that court suppressing evidence in a pending criminal case should not be annulled. On the return day respondents appeared by counsel and moved to quash the writ, and the matter was fully argued and duly submitted for decision. From the record the following facts appear:

On December 16, 1927, one Rella Bolton was, by information filed by relator, charged with the crime of unlawful possession of morphine and thereafter moved to suppress the evidence in the hands of the state officials. On the hearing of this motion Rella Bolton showed to the court that on December 8, 1927, she went to the postoffice at Havre and there received a special delivery package addressed to Ruth Foster, under which name she often received mail, and that, as she was leaving the

building, she was arrested by the sheriff of Hill county and one Daniel P. Bailey, and the package was taken from her. The county attorney then admitted that, unless restrained, he would use the package and its contents as evidence against the woman on her trial under the information referred to.

On behalf of the state it was then shown that, when the package was received at the Havre postoffice, it was unsealed but so wrapped that its contents were undisclosed and tied up with string; it bore the necessary postage and a special delivery stamp. For reasons undisclosed, the postmaster suspected that the package contained narcotics and called Bailey, United States customs agent, into the office and the two unwrapped the package and found that it contained fifteen grains of morphine. Bailey's authority extended only to the seizure of articles illegally transported into the United States and, as the package did not disclose, externally or internally, that it came from a foreign country, he decided that he was without jurisdiction in the matter and took no further action, except that he told the sheriff of Hill county of his discovery.

On learning of the contents of the package the sheriff went with Bailey to the postoffice where the postmaster again unwrapped the package and he recognized its contents as morphine. The package was then rewrapped and the sheriff and Bailey waited until Rella Bolton received the package and passed out of the postoffice with it in plain sight, when the sheriff placed her under arrest; Bailey received the package from her and handed it to the sheriff.

Relator contends that the arrest and seizure were lawful under the circumstances and therefore the order of suppression was erroneous and worked gross injustice upon the state in that it deprived the prosecution of evidence on which to convict, for which it has no remedy by appeal or otherwise; while counsel for Rella Bolton, appearing herein for respondents, contends that the arrest was unlawful and the taking of the package constituted an unreasonable seizure, in violation of the Fourth Amendment to the federal Constitution and sec-

tion 7 of Article III of the state Constitution, as state and federal officers were acting jointly. A determination as to which of these positions is correct depends upon the application of the following propositions of law to the facts and circumstances set out above.

1. A peace officer may make an arrest without a warrant either (1) for a public offense committed in his presence, or (2) when a person arrested has committed a felony, although not in his presence, or (3) when a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it. (Sec. 11753, Rev. Codes 1921.)

The possession of morphine, except under certain circumstances enumerated in the statute, constitutes the commission of a felony (sec. 3200, Rev. Codes 1921, and sec. 3202, Id., as amended by Chap. 38, Laws of 1925).

"The utmost that can be exacted of an officer who arrests [1] without a warrant is that the circumstances shall be such that upon them alone he would be justified in making a complaint upon which a warrant might issue," and in either making complaint or making an arrest without a warrant the officer need not have actual personal knowledge of the facts which constituted the offense. (*State* v. *McCaffery,* 16 Mont. 33, 40 Pac. 63; *State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634.)

The "reasonable cause" for believing the party arrested to have committed a felony is the same as "probable cause" for the institution of a criminal prosecution or seizure without process. (5 C. J. 417; *State ex rel. Neville* v. *Mullen,* above.)

The necessary elements of the grounds on which the officer may act are a belief in the person's guilt, based either upon facts and circumstances within the officer's own knowledge, or upon information imparted to him by reliable and credible third persons, provided there are no circumstances known to the officer materially to impeach the information received.

(*Burt* v. *Smith,* 181 N. Y. 1, 2 Ann. Cas. 576, 73 N. E. 495, quoted in *State ex rel. Neville* v. *Mullen,* above.)

Where an arrest is lawfully made, the arresting officer [2] may take into his possession any articles in the possession of the party arrested which may reasonably be of use on the trial. (*State ex rel. Neville* v. *Mullen,* above.)

When, therefore, the sheriff was informed by federal officers, whose reliability and credibility is not questioned, [3] that the package in question contained morphine and he thereafter saw the package in the possession of the person arrested, the facts and circumstances in his possession constituted reasonable cause for his belief that that person had committed, or was then committing, a felony, and he was justified in making the arrest without a warrant, even without his personal inspection of the contents of the package, and, on making the arrest, he was warranted in taking possession of the package and holding it as evidence; indeed, it was his duty to do so.

2. Counsel for respondents, however, urges that, as Rella [4] Bolton told the officer that she did not know what was in the package as she had not opened it, the officer could not know that a crime was being committed.

Section 3200, above, makes possession of the drugs therein enumerated prima facie evidence of guilt and her lack of knowledge on the subject, if it existed, is a matter of defense to be passed upon by the jury. Further, the reasonable or probable cause required "does not depend on the actual state of the case in point of fact, for there may be probable cause for commencing prosecution against a party although subsequent developments may show his absolute innocence" (quoted in *State ex rel. Neville* v. *Mullen,* above).

3. Conceding for the purposes of this opinion that the information that the package contained morphine was [5] originally obtained by the federal officers by illegally prying into a private piece of mail matter, did that illegal act render the evidence, later obtained, subject to suppression?

The Fourth Amendment to the Constitution of the United States is a prohibition against federal officers only and has no application to states or state officers. (*Hammond Packing Co.* v. *State,* 81 Ark. 519, 126 Am. St. Rep. 1047, 100 S. W. 407; affirmed, 212 U. S. 322, 53 L. Ed. 530, 29 Sup. Ct. Rep. 370; *National Safe Deposit Co.* v. *Snead,* 250 Ill. 584, Ann. Cas. 1912B, 430, 95 N. E. 973; affirmed, 232 U. S. 58, 58 L. Ed. 504, 34 Sup. Ct. Rep. 209; Mr. Chief Justice Taft in *Gaines* v. *State of Washington* (U. S.), 72 L. Ed. ——, 48 Sup. Ct. Rep. 468, opinion rendered May 14, 1928.)

Likewise, the similar provisions against unreasonable searches and seizures found in state Constitutions are restrictions upon the activities of state officers alone and cannot be invoked as against independent action by federal officers or private persons. (*State* v. *Gardner,* 77 Mont. 8, 52 A. L. R. 454, 249 Pac. 574, and cases there cited; *State* v. *Lacy,* 55 N. D. 83, 212 N. W. 442; *Imboden* v. *People,* 40 Colo. 142, 90 Pac. 608; *Davidson* v. *Commonwealth,* 219 Ky. 251, 292 S. W. 754; *State* v. *Barrett,* 121 Or. 57, 254 Pac. 198.)

The provisions of the "Bill of Rights" against unreasonable searches and seizures "was not intended to furnish an asylum for the violators of the law, but a protection against oppression." (*Fitzpatrick* v. *State,* 169 Ala. 1, 53 South. 1021.) So while the courts jealously guard against a circumvention of this provision by the procuration of others to do that which the officers themselves may not do, whether those officers be acting for the state or the federal government, where evidence unlawfully obtained comes innocently into the hands of the officers its use cannot be prevented by the courts.

In a recent opinion by the supreme court of the United States it was held that evidence, obtained by New York troopers acting independently and without the knowledge of federal agents and later turned over to the federal officers, was properly suppressed (*Gambino* v. *United States,* 275 U. S. ——, 52 A. L. R. 1381, 72 L. Ed. 139, 48 Sup. Ct. Rep. 137, and this opinion was heralded as a reversal of former decisions of

that court. However, the case made against Gambino was for illegally transporting liquor from Canada to the state of New York after that state had repealed it prohibition laws, and the opinion is based solely upon the showing that the troopers were acting, under the direction of the governor of New York, and under the provisions of the federal law solely in aid of federal enforcement of the federal prohibition laws and thus directly co-operating with federal agents, although not acting under their direction or with their knowledge. In the opinion Mr. Justice Brandeis declared that ''the conclusion here reached is not in conflict with any of the earlier decisions of this court in which evidence wrongfully secured by persons other than federal officers has been held admissible in prosecutions for federal crimes. For in none of those cases did it appear that the search and seizure was made solely for the purpose of aiding the United States in the enforcement of its laws.''

Of the opinion in *Weeks* v. *United States*, 232 U. S. 383, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341, in which it was held that evidence obtained by police officers in making an unlawful arrest and an unlawful search was admissible in a federal prosecution, Mr. Justice Brandeis, in the Gambino opinion, said: ''It was not shown there that either the arrest or search was made solely for the purpose of aiding in the prosecution of the federal offense. A law of the state made criminal the acts with which the defendant was charged, and the seizure may have been made in enforcing the state law.''

In the case at bar, when the postmaster and the customs agent opened the package addressed to Rella Bolton as ''Ruth Foster,'' it is clear that they were not acting in any manner in aid of the prosecution of a state offense, but solely for the purpose of determining whether a federal law had been violated. Having determined that he had no jurisdiction over the nonmailable matter found in the mail, and knowing that the state law prohibited possession of such article, Bailey

notified the state officer that an offense against a state law was about to be committed and thereafter proved his statement by showing the sheriff the contents of the package. It is true that Bailey thereafter remained as an interested spectator and assisted the sheriff to the extent of receiving the package from the person arrested, but the illegal act by which the woman's constitutional rights had been violated, if there was such a violation, had already been accomplished and that without the knowledge, co-operation or collusion of the sheriff and not in his aid. The sheriff's situation with reference to the knowledge obtained was no different than it would have been had a private citizen advised him that, by an illegal entry, such citizen had discovered a cache of stolen goods and thereafter the informer had gone with the sheriff to point out the place and then assisted the sheriff in arresting the thief as he emerged with the stolen goods. Acts of this nature are not such as render the evidence inadmissible and do not constitute a violation of our constitutional provision relied upon. (*State* v. *Gardner,* above; *Brown* v. *United States* (1926, C. C. A. 9th), 12 Fed. (2d) 926.)

The order of the district court suppressing the evidence is, therefore, annulled.

*Order annulled.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS and STARK concur.

MR. JUSTICE GALEN, Dissenting: I dissent. As shown by the record, the writ was issued in this case over my protest.

It appears that the assistant postmaster *suspicioned* the contents of the package which was wrapped in brown paper, tied with string, postmarked Butte, Montana, and mailed special delivery. He spoke to Bailey, United States customs agent at Havre, about it, who in turn told the sheriff, Timmons, feeling that the subject was beyond his authority. Thereupon Timmons accompanied Bailey to the postoffice and the contents

of the package were examined and the discovery made, after which Timmons and Bailey waited in the postoffice for someone to call for the package. They had not long to wait. The defendant in the criminal action called for mail; the package was delivered to her, she receipted for it, placed it under her left arm and was leaving the postoffice when she was accosted by the sheriff and placed under arrest, without a warrant of any kind. The sheriff took hold of her arm and told her she was under arrest and Bailey took the package from her. She was then asked as to the contents of the package and replied that she did not know. They took her up to Mr. Bailey's office, again examined the contents of the package, remained there about thirty minutes, and then took her to the county jail.

Bailey, customs officer, testified: "There was no indication on the package that it was of foreign origin; consequently it was not under my jurisdiction"; and that he turned the case over to Sheriff Timmons and thereupon rendered assistance to him. The sheriff admits that it was upon the information so received that he arrested the defendant, and the county attorney stated that it was his intention, unless restrained, to use the evidence so obtained against her in proof of the offense with which she is charged.

While there is some discrepancy in the evidence, as I read the record, the package was opened by Patterson, the postmaster, in the presence of the sheriff. Timmons the sheriff, testified: "Q. When you went out this package, you say, was unwrapped? A. When? Q. At the time you saw it in the postoffice? A. Mr. Patterson opened it while I was there and I looked at it and he wrapped it back up * * * . Q. You say he opened it in your presence? A. Yes, sir. Q. The defendant was not there at that time? A. No."

Bailey testified that it was beyond his province, officially or otherwise, to intermeddle with packages received through the United States mail originating within the United States, and his conduct in opening the package was accordingly most

reprehensible. Conceding that Bailey had obtained positive information by his indefensible independent examination of the contents of the package before the inspection thereof made by the sheriff; and conceding further that the sheriff was entitled to act on the information so furnished by Bailey, the record shows that the sheriff (the state officer) was not satisfied with Bailey's report, and did not act solely thereon, but himself went to the postoffice, where the package was opened for his independent inspection. That act constituted the state officer's independent offense. However that may be, the action of the officers in co-operation was in furtherance of the enforcement of a state law.

I fully appreciate the destructive effects upon humanity, both physically and morally, from the use of narcotics, and the great desirability of suppressing the unlawful traffic therein. I have no patience with a peddler of drugs and feel that they are despicable leeches on society; their activities for profit resulting in the destruction of individuals, who, but for drug addiction, would be useful members of society. But, however necessary and desirable to suppress such traffic and punish infractions of the law, it is more important to the stability of the government and the protection of the guaranteed liberties of our people to uphold and apply our constitutional restrictions. The courts of this country should not on any theory of expediency disregard the sacred and inviolable rights of the people, as the preservation of our constitutional guaranties is far more important than the enforcement of any law. I realize that such laws should and must be enforced for the good of society, but I insist, under our system of government, it may only be done in conformity with the requirements of the Constitution. As was well and appropriately stated by Mr. Justice Brandeis, dissenting, in the recent case (April 9, 1928) of *Casey* v. *United States*, 275 U. S. ——, 72 L. Ed. 420, 48 Sup. Ct. Rep. 373, "I am aware that courts— mistaking social values and forgetting that a desirable end cannot justify a foul means—have, in their zeal to punish,

sanctioned the use of evidence obtained through criminal violation of property and personal rights or by other practices of detectives even more revolting.''

By way of dissent, in the case chiefly relied upon by the relator (*State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634), followed in the majority opinion, I expressed myself in emphatic terms in denunciation of the arrest of persons by officers of the law without any semblance of a warrant, but merely upon *suspicion,* and I still adhere to such views. The United States supreme court has in recent decisions given express approval to the rule which I contend applicable. (*Agnello* v. *United States,* 269 U. S. 20, 51 A. L. R. 409, 70 L. Ed. 145, 46 Sup. Ct. Rep. 4; *Byars* v. *United States,* 273 U. S. 28, 71 L. Ed. 520, 47 Sup. Ct. Rep. 248; *Gambino* v. *United States,* 275 U. S. ——, 52 A. L. R. 1381, 72 L. Ed. 139, 48 Sup. Ct. Rep. 137.)

In *Weeks* v. *United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341, the court held that the protection of the constitutional guaranty ''reaches all alike, whether accused of crime or not, and the duty of giving it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain convictions by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which the people of all conditions have a right to appeal for the maintenance of such fundamental rights.''

Our late Chief Justice Brantly, in *State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362, referring to the above decision by the supreme court of the United States and Montana's like constitutional guaranty (sec. 7 of Article III), speaking for this court, said: ''This forceful statement of the

learned Justice applies as well to the guaranty found in our own Constitution; for, except that the order in which the several clauses in it are arranged is different, it is expressive of the same fundamental principles and was intended to be equally as effective to prevent an invasion of the rights of the citizen of the state under the guise of law by the state government or any of its officers. Since it was intended to take away from the legislature the power to authorize an invasion of the rights of the citizen by a search of his home or a seizure of his person or property in any other case than it permits, it is to be strictly construed in his favor."

"Constitutional provisions for the security of person and property are to be liberally construed, and it is the duty of courts to be watchful for the constitutional rights of the citizen, and against the stealthy encroachments thereon. (*Boyd* v. *United States,* 116 U. S. 616, 635, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524; *Gouled* v. *United States,* 255 U. S. 298, 304, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261.)" (*Byars* v. *United States,* supra.)

"The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against the revival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods, which, regarded superficially, may seem to escape the challenge of illegality by which, in reality, strike at the substance of the constitutional right." (*Byars* v. *United States,* supra.) And "it is well settled that, when properly invoked, the Fifth Amendment protects every person from incrimination by the use of evidence obtained through search or seizure made in violation of his rights under the Fourth Amendment." (*Agnello* v. *United States,* supra.)

Section 3929 of the Revised Statutes of the United States forbids any postmaster or other person to open any letter entrusted to the mail not addressed to himself. Referring to this section of the statute, Mr. Chief Justice Taft, speaking

for the supreme court of the United States in the recent case (June 4, 1928) of *Olmstead* v. *United States,* Nos. 493, 532, 533, (U. S.) 72 L. Ed. ——, 48 Sup. Ct. Rep. 564, said: "It is plainly within the words of the Amendment [4th] to say that the unlawful rifling by a government agent of a sealed letter is a search and seizure of the sender's papers or effects. The letter is a paper, an effect, and in the custody of a government that forbids carriage except under its protection," and in the same case Mr. Justice Brandeis, in his dissenting opinion, well said: "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a law-breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means— to declare that the government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face."

"Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domicils. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. No law of Congress can place in

the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the Fourth Amendment of the Constitution." (Mr. Justice Field, in the case of *In re Orlando Jackson,* 96 U. S. 727, 24 L. Ed. 877.)

In *Byars* v. *United States,* supra, it was held that where a federal officer participates officially with state officers in a search, so that in substance and effect it is their joint operation, the legality of the search and of the use in evidence of the things seized, is to be tested, in federal prosecutions, as it would be if the undertaking were exclusively his own. And in the case of *Gambino* v. *United States,* supra, it was held that: "Evidence obtained through wrongful search and seizure by state officers who are co-operating with federal officers must be excluded." I can see no reason for applying a different rule respecting like action by a state officer assisted by a federal officer in prosecutions arising under state law.

It is manifest that the defendant's constitutional rights were invaded by the joint and separate action of state and federal officers. In my opinion the writ should be denied.