SMITH, Executrix, Respondent, *v.* SULLIVAN, Appellant.

(No. 4,132.)

(Submitted April 14, 1920. Decided May 24, 1920.)

[190 Pac. 288.]

*Work and Labor — Pleading — Complaint — Anticipating Defense—Refusal to Strike—Harmless Error—Admissions—Evidence—Loose-leaf Ledger—Admissibility—Rules of Evidence—Construction.*

Pleading — Complaint — Anticipating Defense—Admissions—Refusal to Strike—Harmless Error.

1. If error was committed in refusing to strike a paragraph from plaintiff's complaint in an action for work and labor performed and goods furnished, which anticipated defendant's defense by alleging that the latter had an offset or counterclaim in a stated amount, it was rendered harmless by permission to defendant to plead a counterclaim for the same amount for which he received credit, plaintiff's allegation amounting to no more than an admission that the amount stated was due defendant.

Evidence—Loose-leaf Ledger—Admissibility.

2. *Held,* that pages of a loose-leaf ledger containing plaintiff's account for work done and supplies furnished, the items having been immediately transferred to the ledger from time-cards filled out by the mechanics doing the work and using the supplies, were properly admitted in evidence though the mechanics themselves were not called to testify and their absence was not explained, the bookkeeper, however, stating that the ledger was honestly and correctly kept in the regular course of business.

Rules of Evidence—Construction.

3. Rules of evidence are not intended to be ironclad, but must be so construed that they will adapt themselves to the varying situations which changing conditions in the business world render imperative.

[As to admissibility of duplicate sales slip or sheet from loose-leaf ledger as book of account, see note in Ann. Cas. 1914D, 489.]

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

Action by Letitia M. Smith, executrix, substituted for M. G. Smith, deceased, against Michael Sullivan, doing business as the Sullivan Electric Company. From a judgment for plain-

The question of admissibility of "ledger" in evidence is discussed in a note in 52 L. R. A. 581.

tiff and an order denying a new trial, defendant appeals. Affirmed.

*Mr. J. E. Healy,* for Appellant, submitted a brief, and argued the cause orally.

The open and patent error in admitting the slips in evidence ought to require no argument, in the light of the decisions of this court. (*Meredith* v. *Roman,* 49 Mont. 204, 141 Pac. 643, and cases there cited.) The record herein is silent as to any reason why the original slips made by the men who it is claimed did the work were not produced in the trial of this case; it is equally silent on the reason why the men themselves were not called, or their absence in some way accounted for. See the very pertinent remarks of Judge Lumpkin of Georgia in the case of *Creamer* v. *Shannon,* 17 Ga. 65, 63 Am. Dec. 226, and quoted in Gillette on Indirect and Collateral Evidence at section 184. We invite the court's attention to the full discussion of Mr. Gillette in section 173 *et seq.* of the above work, and to the annotations in Smith's Leading Cases to the case of *Price* v. *Earl of Torrington.*

Nor is the excuse sufficient that this case falls within the rule given in our Code in sections 7941 and 7951, Revised Codes. The chapter in which the sections quoted are found are evidently taken from California, and we find no decision of that state which departs from the rule of property there set forth and declared. As we have pointed out the usual course of business was not followed herein. Besides the same person did not make the original entry and the alleged copy. There was no evidence of infallibility in any of the persons named or in the plaintiff himself. The California courts and our own court show no disposition to depart from the time-honored rule established in *Meredith* v. *Roman* and in the cases cited in the note to section 1947 of the California Code of Civil Procedure, Kerr's Cyclopedic Edition. On the contrary, the case herein illustrates the positive unjust consequences which flow from departing from the established

pathway. A copy made by the same person at or near the time of the transaction may be just as good as the original and may be an original under the statute. But to extend the rule beyond that is to turn a judicial proceeding into a farce.

*Messrs. John E. Corette* and *Carl J. Christian,* for Respondent, submitted a brief; *Mr. Christian* argued the cause orally.

Even in the absence of a statute such as section 7951, Revised Codes, it is uniformly held by the courts that entries made into books of account, of goods sold or labor or work done, from sales slips, charge slips, slates, *etc.,* if made at or near the time of the original charge or entry, are admissible in evidence as original entries. In such cases the first entry or charge is regarded as preparatory or preliminary to the final record in the regular book of account or ledger. The regular book of account is regarded as the first and original entry, and, as such, competent proof of the charges therein set forth. (*Landis* v. *Turner,* 14 Cal. 573; *Wisconsin Steel Co.* v. *Maryland Steel Co.,* 203 Fed. 403, 121 C. C. A. 507; *Place* v. *Baugher,* 159 Ind. 232, 64 N. E. 852; *State* v. *Shinborn,* 46 N. H. 497, 88 Am. Dec. 224; *American Locomotive Co.* v. *Hamblen,* 217 Mass. 513, 105 N. E. 371; *Ingraham* v. *Bockius,* 9 Serg. & R. (Pa.) 285, 11 Am. Dec. 730; *McGoldrick* v. *Traphagen,* 88 N. Y. 334, 335; *Faxon* v. *Hollis,* 13 Mass. 427; *Redlich* v. *Bauerlee,* 98 Ill. 134, 38 Am. Rep. 87; *Sickles* v. *Mather,* 20 Wend. (N. Y.) 72, 32 Am. Dec. 521.)

In the following cases, upon statutes practically identical with section 7951, books such as the trial court here admitted in evidence were held to be properly admissible to prove the item set forth in same, and that there need be no further proof of the correctness of the items than the production of the book and the testimony of the bookkeeper as to its correctness, and that the items were by the bookkeeper correctly transcribed from the original slips. (*Weinberg* v. *Garren* (Tex. Civ.), 155 S. W. 1013; *Navarre* v. *Honea,* 41 Okl. 480, 139 Pac. 310.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The plaintiff in his complaint alleges that between November 23, 1915, and August 15, 1916, he performed certain work and labor upon automobiles owned by the defendant, and furnished repair parts and pieces for such cars, and sold and delivered to defendant oil, gasoline and other materials; that the work was done and the goods were furnished at the special instance and request of defendant, and were of the reasonable value of $556.17, no part of which has been paid except the sum of $52.90. The complaint then contains the following paragraph: "But the defendant has a legal offset or counterclaim for goods, wares and merchandise and labor sold and delivered and performed by the defendant for the plaintiff between the 11th day of September, 1915, and the 14th day of April, 1916, of the reasonable value of, $202.11, and there is now due, owing, and unpaid from the defendant to the plaintiff the sum of $301.16." The prayer is for the balance, $301.16.

The defendant appeared and moved to strike from the complaint the paragraph above; and, the motion being denied, he answered, admitting that he had employed plaintiff to perform certain work and furnish certain repairs for the automobiles, but under a special contract that the cost should not exceed $90. The other allegations of the complaint are denied, and defendant then pleaded as a counterclaim the same account mentioned in the paragraph above. There was issue joined by reply, and the trial thereafter resulted in a verdict for plaintiff, according to the prayer of the complaint. In passing upon a motion for new trial, the court required plaintiff to remit $25 of the amount of the verdict, and, this having been done, judgment was entered, the motion denied, and defendant appealed.

1. Error is predicated upon the ruling of the trial court, [1] refusing to strike from the complaint the paragraph quoted above. It is true that the draftsman violated the rules of good pleading in attempting to anticipate the defendant's

defense, but the allegation amounted to nothing more than an admission on plaintiff's part that he owed defendant $202.11, and if he had merely admitted the same while a witness on the stand, or by failing to deny the allegations of defendant's counterclaim, the position of the parties would not have been altered. Defendant was permitted to plead the same account as a counterclaim, and received credit for it. It is therefore impossible for us to perceive in what manner defendant could have been prejudiced by the court's ruling. The maxim, "Error appearing, prejudice will be presumed," ceased to be of force or effect in this state many years ago. It is now the rule that this "court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

2. Plaintiff kept a garage in Butte, and was engaged in the business of repairing automobiles, and selling oil, gasoline and other supplies. He worked as a laborer himself, and em-
[2] ployed three or four other mechanics. Repair parts were supplied to the mechanics by plaintiff or his bookkeeper. Every mechanic was furnished a time-card, and it was his duty and practice to enter in writing on this card, as he proceeded with his work, the amount of time devoted to each separate job and the materials used by him thereon. Every day these time-cards were turned in to the bookkeeper, who immediately transferred the items to a loose-leaf ledger, distributing to each job each workman's time upon that job and the materials used by him, with the price of the same. Apparently the time was kept in dollars and cents, based upon the prevailing wage scale. The time-cards and loose-leaf ledger constituted the only books of account employed in plaintiff's business. The evidence discloses that this method of procedure had been employed with respect to defendant's cars. The leaves of the ledger containing defendant's account disclose that three or four of the mechanics, other than plaintiff, had

worked upon defendant's cars from time to time. These other mechanics were not called to testify; neither was their absence explained. Plaintiff and the bookkeeper were the only witnesses in plaintiff's behalf.

In so far as indicated by the time-cards kept by himself, plaintiff testified that the work was done and materials were supplied and actually used on defendant's cars, and that the several amounts charged therefor were reasonable. He also testified that he maintained careful supervision of the other mechanics; had observed them at work and using materials upon defendant's cars, and positively identified some of the items; that he knew in a general way that their time-cards actually spoke the truth, but upon cross-examination admitted that he was frequently out of the garage, and could not know definitely that the accounts on the time-cards of the other mechanics were absolutely correct. The bookkeeper testified that the materials charged upon the time-cards of the other mechanics were actually delivered to the mechanics for use upon defendant's cars; that she had observed these mechanics at work upon defendant's cars, and had seen some of the parts placed in the cars, and could identify some of the items, but she was not able to say that all the time and materials indicated upon those time-cards had actually been employed upon defendant's cars.

The items of time and materials thus definitely identified constituted only a portion of the whole. To supplement this evidence and make out the case against defendant for the entire amount of the bill, plaintiff introduced in evidence, over objection, the loose leaves from the ledger which contained defendant's account, and the ruling of the court admitting this evidence is assigned as error. Our Code (section 7862) provides: "A witness can testify to those facts only which he knows of his own knowledge; that is, which are derived from his own perceptions, except in those few express cases in which his opinions or inferences, or the declarations of others, are admissible." This statute is but declaratory of the common-

law rule in force generally, long before the Code was adopted. [3] The rules of evidence were never intended to be iron-clad. The law is progressive. It is not intended that a new rule shall be adopted to meet the exigencies of every new case, but the general rules are to be so construed that they will adapt themselves to the varying situations which the lapse of time and changing conditions in the business and commercial world render imperative. The purpose of the rule above is to elicit facts; to obtain the best evidence consistent with the circumstances of the case, or, in other words, to require that degree of proof, which produces conviction in an unprejudiced mind.

It is insisted by appellant, in effect, that it required the composite testimony of the several mechanics and the book-keeper to render the books of account admissible, and, in the absence of the mechanics, the books contained an element of hearsay which rendered them inadmissible. To the general rule that a witness must speak from personal knowledge, a number of exceptions have been recognized by the courts generally, and this is particularly true with respect to the character of evidence now under consideration. If the mechanics were dead or out of the jurisdiction of the court at the time of the trial, the authorities generally would admit the books if they were kept in the usual course of business and the entries were transferred to them within a reasonable time after they were made, and this upon the ground of the impossibility of obtaining the confirmatory testimony. Other authorities have expanded the exception somewhat, and grounded the admissibility of the books upon the unavailability of the confirming witnesses, without reference to the cause of the unavailability. Wigmore on Evidence, section 1530, after considering the exceptions noted, as where the entrant or transactor is dead or both of them are dead, treats of the subject now under review as follows:

"One more consideration remains to be noted. The supposition in the above cases was that B. or S. or both were dead.

But suppose, instead, that S., the salesman, teamster, or the like, is otherwise unavailable; is the result to be any different? It need not be. In the language of Chief Justice Shaw, already quoted (*ante,* par. 1521): 'The ground is the impossibility of obtaining the testimony, and the cause of such impossibility seems immaterial.' Now the ordinary conditions of mercantile and industrial life in some offices do in fact constantly present just such a case of practical impossibility. Suppose an offer of books representing transactions during several months in a large establishment. In the first place, the employees have in many cases changed, and the former ones cannot be found; in the next place, it cannot always be ascertained accurately which employee was concerned in each one of the transactions represented by the hundreds of entries; in the third place, even if they could be ascertained, the production of the scores of employees to attend court and identify in tedious succession the detailed items of transactions would interrupt and derange the work of the establishment, and the evidence would be obtained at a cost practically prohibitory; and finally, the memory of such persons, when summoned, would usually afford little real aid. If unavailability or impossibility is the general principle that controls (*ante,* par. 1521); is not this a real case of unavailability? Having regard to the facts of mercantile and industrial life, it cannot be doubted that it is. In such a case, it should be sufficient if the books were verified on the stand by a supervising officer who knew them to be the books of regular entries kept in that establishment, and the production on the stand of a regiment of bookkeepers, salesmen, shipping clerks, teamsters, foremen or other subordinate employees, should be dispensed with. No doubt much should be left to the discretion of the trial court; production may be required for cross-examination, where the nature of the controversy seems to require it. But the important thing is to realize that upon principle there is no objection to regarding this situation as rendering in a given

case the production of all the persons practically as impossible as in the case of death.

"The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so. Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the courtroom. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical."

If only the death of the mechanics or their absence from the jurisdiction of the court would excuse their being called as witnesses, then it might occur that, although within this state, they would be at such distance from the place of trial that their mileage and *per diem* as witnesses would amount to

more than the total of the items of the account which they would be called upon to identify. It cannot be possible that the law contemplates that a clerk who has sold fifty cents worth of ribbon must be called as a witness, at an expense of at least three dollars—the *per diem* of a witness for one day —to identify the sale slip, before the account-books containing the item can be admitted in evidence to prove that the ribbon was sold. Furthermore, some of the transactions recorded upon the time-cards of these absent mechanics occurred a year and a half prior to the trial, and it is inconceivable that, if called, they could have remembered the facts recorded. At best, they could probably have done nothing more than identify the entries upon the cards as in their handwriting, and generally testified that they kept accurate accounts. There are numerous reported cases which hold that the books are admissible under the exception as amplified by Wigmore above, without calling the clerks who made the entries upon the sale slips or time-cards, and without explaining their absence, and the reasoning of these courts appeals to us. Among the leading cases of this class are *State* v. *Stephenson,* 69 Kan. 405, 105 Am. St. Rep. 171, 2 Ann. Cas. 841, 76 Pac. 905; *L. & N. R. Co.* v. *Daniel,* 122 Ky. 256, 3 L. R. A. (n. s.) 1190, 91 S. W. 691; *Firemen's Ins. Co.* v. *Seaboard A. L. Co.,* 138 N. C. 42, 107 Am. St. Rep. 517, 50 S. E. 452.

In *Meredith* v. *Roman,* 49 Mont. 204, 141 Pac. 643, the account-books were excluded, but the facts were that the book-keeper was not called, his absence not accounted for, and the books were not identified: The court said: "There was in fact no preliminary evidence tending to show that the books had been kept in the usual course of business, that the entries had been made contemporaneously with the transactions out of which the charges grew, or that they had been honestly and correctly kept. The defendant Bennett, in connection with whose testimony they were offered, testified in substance that he knew nothing of them, except that they had been delivered to him by Bradley after the work had been completed. This

preliminary evidence was necessary to render the books admissible.''

Our conclusion is that the record contains sufficient evidence of the trustworthiness of the time-cards to admit the ledger which, under the provisions of section 7951, Revised Codes, was the book of original entries. It was within the sound discretion of the trial court to require the mechanics to be called, or not, and in the absence of any showing of abuse of discretion the ruling admitting the book was not erroneous. The bookkeeper identified the ledger as the book kept by the plaintiff in the regular course of business, testified that the entries upon the time-cards were transferred to the ledger contemporaneously with the transactions; that the items were transferred accurately, and the book fairly, honestly and correctly kept.

The judgment and order denying a new trial are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HURLY, MATTHEWS and COOPER concur.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.

