STATE, RESPONDENT, *v.* SMART, APPELLANT.

(No. 6,134.)

(Submitted November 21, 1927. Decided December 10, 1927.)

[262 Pac. 158.]

*Criminal Law — Larceny of Livestock — Evidence—Exhibits— Harmless Error—Trial—Misconduct of County Attorney— Reversible Error—Appeal—Rehearing—Matter not in Record not Open to Consideration.*

Larceny of Livestock—Appeal—Sufficiency of Evidence—When Question Reviewable Only.
1. On appeal from a judgment of conviction under section 12126, Revised Codes 1921 the defendant may by bill of exceptions bring before the supreme court for review any order or ruling of the trial court in admitting or rejecting testimony, or in de-

---

1. See 8 Cal. Jur. 514.

ciding any question of law not a matter of discretion or in instructing the jury, but the sufficiency of the evidence to justify the verdict may be reviewed only on appeal from an order denying a new trial, unless the 'record discloses that there is no evidence even remotely to prove the elements of the crime charged.

Same—Excluded Exhibits—Erroneous Admission of Preliminary Evidence Rendered Harmless by Cautionary Instruction.

2. Alleged error in permitting a witness for the state to answer preliminary question relating to exhibits which were excluded, *held* harmless in view of the cautionary instruction of the court that the jury should only consider the testimony of witnesses on the stand and such documentary exhibits which had been admitted in evidence.

Same—Exhibits—Proper Admission in Evidence.

3. Under the rule that records kept in the usual course of business contemporaneously with the transaction therein recorded, are admissible in evidence upon identification by one who made the entries or supervised their making, in a prosecution for the larceny of horses shipped out of the state the original tagging and numbering record kept by a commission house which received them and the record made upon unloading the stock were admissible upon identification by the witness testifying.

Same—Error in Admission of Evidence Favorable to Appellant Harmless.

4. For error committed in a criminal prosecution which did not prejudicially affect defendant's substantial rights the judgment of conviction will not be reversed, nor will that result follow where the error resulted in his favor; hence where the court erred in excluding a copy of a stock inspector's report, showing the brand, made on a shipment of horses charged to have been stolen but the oral testimony relating to the brand was more in favor of defendant than the exhibit would have been, the error was harmless.

Criminal Law — District Courts — Holding Extended Night Sessions Criticised—Reasons.

4a. The practice indulged in occasionally by district courts of holding extended night sessions in criminal cases, presumably in the interest of economy, may more often result in extravagance, such sessions placing too great a strain upon court and counsel, as well as upon the jury with the consequent likelihood of prejudicial error being committed under stress of weariness and irritation calling for a reversal of the judgment of conviction and a new trial entailing added expense.

Same—Misconduct of County Attorney *Held* Reversible Error.

5. Where the county attorney in the course of his closing argument to the jury misstated the evidence on a question vital to the defendant, and the court upon request of his attorney re-

---

3. Admissibility of entries in course of business, see notes in 138 Am. St. Rep. 472; 53 L. R. A. 526. See, also, 10 Cal. Jur. 904; 10 R. C. L. 1171.

4. See 8 Cal. Jur. 599.

5. Misstatement of facts by prosecuting attorney in argument to jury as ground for reversal, see note in L. R. A. 1918D, 4. See, also, 2 R. C. L. 420.

fused to correct him, neglected to admonish the jury to disregard the statement, denied him an exception and refused to permit him to make a proper record in the presence of the jury, there was prejudicial error entitling defendant to a new trial.

Same—Appeal—Rehearing—Matter not in Record may not be Considered.

6. The supreme court on appeal must decide every case on the transcript certified to it as correct and, therefore, may not on motion for rehearing consider matters contained in the report of a referee appointed by it to settle a bill of exceptions in the case whose report that the original record as certified was correct, was adopted by the supreme court.

---

[1]    Criminal Law, 17 C. J., sec. 3541, p. 202, n. 68; sec. 3550, p. 206, n. 45 New.

[2]    Criminal Law, 17 C. J., sec. 3667, p. 326, n. 80.

[3]    Criminal Law, 16 C. J., sec. 1527, p. 743, n. 77, 80.

[4]    Criminal Law, 17 C. J., sec. 3727, p. 359, n. 59; sec. 3751, p. 368, n. 5.

[5]    Criminal Law, 16 C. J., sec. 2243, p. 899, n. 2; sec. 2270, p. 916, n. 52; 17 C. J., sec. 3462, p. 170, n. 12; sec. 3751, p. 369, n. 6.

[6]    Criminal Law, 17 C. J., sec. 3444, p. 161, n. 66; sec. 3458, p. 167, n. 77; sec. 3539, p. 200, n. 40.

*Appeal from District Court, Treasure County; G. J. Jeffries,* Judge.

A. H. SMART was convicted of grand larceny and appeals from the judgment. Reversed and remanded.

*Margaret Young,* for Appellant, submitted an original and a supplemental brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for the State, submitted a brief; *Mr. S. R. Foot,* Assistant Attorney General, argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

Upon a plea of not guilty to an information charging grand larceny, the defendant was tried by a jury and found guilty, the jury fixing his punishment by its verdict at from two to four years in the state penitentiary. Judgment was entered upon the verdict, and appeal has been prosecuted therefrom.

The defendant has specified nineteen alleged errors committed by the trial court as reason for reversal of the judgment, the first thirteen of which relate to the admission and exclusion of evidence and the giving and refusal to give certain instructions to the jury. Assignments of error numbered 14 and 15 relate to orders made by the court during the progress of the trial and numbers 16 to 19, inclusive, involve question as to the sufficiency of the evidence. At the outset the attorney general contends that this court is without jurisdiction to review the defendant's assignments of error in consequence of the fact that he did not move the trial court for a new trial, the appeal being taken directly from the judgment.

By statute it is provided: "Upon an appeal taken by the [1] defendant from a judgment, the court may review any intermediate order or ruling involving the merits, or which may have affected the judgment." (Sec. 12126, Rev. Codes 1921.) In construing this section it was by this court held, and we think correctly, that on an appeal from a judgment of conviction the defendant may, by bill of exceptions, bring before this court, for review, errors alleged to have been committed by the trial court in any intermediate order or ruling involving the merits of the case or which may have affected the judgment, also rulings of the court upon matters of law in the exclusion or admission of testimony during the progress of the trial; and that errors in law alleged to have been committed during the trial may be by this court reviewed either on appeal from the judgment or from an order denying a motion for a new trial. (*State* v. *O'Brien*, 18 Mont. 1, 43 Pac. 1091, 44 Pac. 399; *State* v. *Francis*, 58 Mont. 659, 194 Pac. 304; *State* v. *Brantingham*, 66 Mont. 1, 212 Pac. 499.) In the case last cited the statute is construed to mean that, on an appeal from the judgment, this court "may review any order or ruling of the trial court in admitting or rejecting testimony, or in deciding any question of law not a matter of discretion, or in instructing the jury." But questions involving the sufficiency of the evidence

to justify the verdict may be reviewed only on appeal from an order denying a new trial, save only where the record discloses that there is no evidence sufficient to even remotely prove the elements of the crime charged. (*State* v. *Brantingham,* supra.) It thus appearing that the practice is settled, we shall proceed, accordingly, to a consideration of such of the defendant's assignments of error as we deem worthy of note.

The defendant was charged with the larceny of "two grey gelding horses, each about 6 years old, branded what is known as quarter circle K J on the right shoulder," committed in Treasure county about November 11, 1924. There was ample proof to sustain the charge, and a review thereof is wholly unnecessary.

Of the defendant's several assignments of error, we are of opinion that four thereof are deserving of serious consideration in disposition of this appeal. The first relates to the action of the court in permitting a witness to testify over objection respecting the contents of certain proposed exhibits which were not admitted in evidence; the second raises question as to the admissibility in evidence of two certain exhibits offered by the prosecution; the third relates to the exclusion from the evidence of defendant's offered exhibit No. 5; and the fourth pertains to error alleged to have been committed by the court in denying to the defendant the privilege of having the county attorney corrected on a misstatement of important facts in his closing argument to the jury. These will be discussed and disposed of in their order.

1. As to the first of such assignments, we have carefully [2] reviewed all of the testimony of the witness Lester given respecting the proposed exhibits and therefrom do not find any evidence elicited from him respecting the offered exhibits bearing upon the question of the defendant's guilt justifying a reversal, in view of the fact that the court ruled respecting the admissibility of the exhibits when they were by the prosecution offered in evidence: "The only evidence before the court

concerning the exhibits was as to the authenticity of them, in connection with them, not the contents. The questions were preliminary questions. The exhibits were not offered in evidence, and no evidence was given before the jury. The jury understands that they are not to consider any matters as to documents which are not admitted in evidence. In other words, the documents 'I' and 'O' were admitted in evidence, and those are the only matters before the jury.'' And further, by way of additional precaution in the protection of the defendant's rights, the jury were particularly instructed by the court that in its consideration of the case it should ''only consider the testimony of the witnesses upon the witness-stand and such documentary or physical exhibits as have been admitted in evidence,'' and further, that the jury ''should totally disregard and in nowise consider all testimony stricken by the court during the progress of the trial.'' The court carefully guarded the rights of the defendant, and he was in no manner prejudiced in his substantial rights. The testimony was simply preliminary to the offer made of the exhibits in evidence, and they were by the court excluded.

2. The state's offered exhibits ''I'' and ''O'' were received [3] in evidence, over the defendant's objection. Exhibit ''I'' is the original tagging and numbering record kept by the commission house at Grand Island, Nebraska, to which two carloads of horses were consigned by the defendant in a shipment made by him from Hardin, Montana, on or about the date of the commission of the offense as in the information alleged. It listed and described three grey geldings included in the shipment and the numbers given to each by the commission house for identification in the sale of the horses so consigned to it. And exhibit ''O'' is called an ''unloading card.'' The original entries on both were made by the witness Lester in his handwriting in the usual course of the business of the commission firm to whom the horses were consigned by the defendant and by whom the witness was employed, it being a part of his duties to keep or supervise the keeping of

such records from data within his knowledge and that furnished him by other employees of the commission house. Concerning the manner in which such accounts are kept, the witness testified: " 'Exhibit O' represents the unloading card, when the stock is received by us. This is supposed to be two carloads. I made that original entry. Our custom in making these entries is this: The night man hands in a slip with the car numbers on it and the number of head. I get my information from the night man of the freight that came during the night. We obtain, usually, the consignor's name from the railroad company. Then we make up the record in the office in the morning as to the number of head and the car number. I get my knowledge of the number of the shipment when they are tagged. This is after they have been unloaded. I did not help unload them. So far as I know, there might have been other horses. We have horses coming in all the time. I would not say that these were the horses received from Smart. I am testifying from the records only. I do not know these things of my own knowledge. Just the records. And that information I received from the night man as to the number unloaded. The things represented on 'State's Exhibit I' I obtained as follows: The horses were pointed out to me as having been shipped by Smart. These horses were already in the pens, and I helped tag them. They did not necessarily have to point them out to me—we took the pens and run through. We had the pens numbered when they were unloaded, but I got that information from somebody else. I do not know from my own knowledge, as I said before; I am testifying from the records."

Books of account and records kept in the usual course of business contemporaneous· with the transactions therein recorded, or approximately so, are admissible in evidence upon their identification by one who made the entries or supervised the making thereof, and evidence to the effect that such records are the books or records kept in the usual course of business. (Wigmore on Evidence, sec. 1530; *Smith* v. *Sullivan,* 58 Mont.

77, 190 Pac. 288; *Gallatin County F. Alliance* v. *Flannery,*
59 Mont. 534, 197 Pac. 996; *State* v. *Cassill,* 70 Mont. 433,
227 Pac. 49.) ˙ Professor Wigmore states the rule as follows:
"In such a case, it should be sufficient if the books were veri-
fied on the stand by a supervising officer who knew them to
be the books of regular entries kept in that establishment, and
the production on the stand of a regiment of bookkeepers,
salesmen, shipping clerks, teamsters, foremen, or other subor-
dinate employees should be dispensed with. * * * The
conclusion is, then, that where an entry is made by one person
in the regular course of business, of a transaction lying in
the personal knowledge of the latter, there is no objection to
receiving that entry under the present exception, provided
the practical inconvenience of producing on the stand the
numerous persons thus concerned would in the particular case
outweigh the probable utility of doing so."

In *State* v. *Cassill,* supra, the court, speaking through Mr.
Chief Justice Callaway, well said: "The excellence and thor-
oughness of modern bookkeeping methods in banks, large
mercantile establishments and business concerns generally are
well known. This method of proving the books is in accord-
ance with modern business requirements and we think when a
proper foundation for its application is laid it affords a factor
of safety quite equal to that recognized in *Ryan* v. *Dunphy,*
4 Mont. 356, 47 Am. Rep. 355, 5 Pac. 324, and *Meredith* v.
*Roman,* 49 Mont. 204, 141 Pac. 643." Here the exhibits were
sufficiently identified by a witness qualified to testify concern-
ing them, and they were properly admitted in evidence.

3. Defendant's offered exhibit No. 5 is a copy of the
[4] inspection report made by Dr. De Vore, deputy stock
inspector, on November 27, 1924, the date the inspection of
the horses was by him made at Hardin, permitting their ship-
ment from the state, such copy having been subsequently
forwarded to the sheriff of Treasure county. Among other
horses included in the shipment there are two grey geldings,
described in such exhibit bearing the brand quarter circle X

reverse L on the right shoulder, thus ⋈. In· view of the
foundation laid, the exhibit should have been admitted, but
was its exclusion so prejudicial to the rights of the defendant
as to require a reversal of the judgment? We think not, as
all that could possibly have been shown therefrom respecting
the horses in question was more fully and clearly put before
the jury by oral testimony respecting the contents of the pro-
posed exhibit and the brands upon such horses. The exhibit
merely shows, pertinent to the issue, "Number of head 2,
Brand ⋈ R. S.—Gr. Gelding," whereas, the oral evidence
admitted respecting the contents of the exhibit is more favor-
able to the defendant than the exhibit itself; therefore its
exclusion was harmless error. For the prosecution, Sheriff
Isaac, speaking of the proposed exhibit, testified:

"Mr. De Vore was deputy brand inspector. I cannot say
whether he examined these horses or not. I have a copy of
his inspection sheet of these horses. I was provided with a
copy of the brands of the horses shipped by Mr. Smart. This
inspection sheet did not show the brand of these two horses in
question. * * * The record shows no quarter circle K J,
but does show a quarter circle X L. The record made by
De Vore, the stock inspector of the state of Montana, shows
the brand was a quarter circle X L. It does not show that
he shipped any such horses as quarter circle K J. The copy
of the inspection sheet passed by the state official shows it was
a quarter circle X L on the right shoulder, made thus, ⋈.
According to the inspection sheet there were no other grey
horses in this shipment. * * * And that record, inspection
sheet, shows plainly there were no horses shipped by Smart
under the brand quarter circle K J."

As a witness for the defense, Dr. De Vore, who inspected
the shipment of the horses and made inspection certificate
thereof, testified: "I am familiar with the inspecting of brands
at all seasons of the year. I have examined them in the winter
season and in the summer season. And I examined this par-
ticular shipment of horses. As I remember this bunch of

horses, they were all good plain brands. The brands as I read them are true as near as I could make it. If the report made by me was that these horses were branded quarter circle X reverse L, then that was the brand I saw on them, and I put it down that way. I would be pretty apt to put it down the way I found it, if I could ascertain the brand at all. If I remember right, these horses were inspected in November, about Thanksgiving day. The hair on the animals at that time would be rather long. It would be the same as fall and about the same as winter. * * * I will say that a quarter circle K J, and quarter circle X L or X reversed L, or X L in proper position, might be confused in that season of the year, depending on how heavy the brand was when it was put on the animal. From my experience as a horseman, I have discovered that occasionally there will be a mistake in a brand, particularly in the winter season in this section of the country. It is possible for experts on brands to be mistaken lots of times. Basing my answer on my knowledge of range horses on the range in Rosebud and Treasure counties, during the fall of 1924, and the general methods of branding and my general knowledge and experience as a stockman in that vicinity, I would say that if a horse had the brand quarter circle K J or quarter circle X L, it might be difficult to tell which brand it was. If the brand was plain, you might and you might not mistake the one for the other, but if you clipped them, of course, and went to the trouble of getting a real close examination, of course, you could tell."

The defendant himself testified: "I am familiar with the reading of brands on horses on the public range. I have had considerable experience with horses upon the public range. It is difficult to read brands on range horses during the latter part of November in Rosebud county and Treasure county, and especially on the range known as Froze-to-Death, in November, 1924. The hair is long, which is the principal reason. This long hair would have a tendency to cover any horizontal lines on the brand at that time of the year. To

a certain degree it will have a tendency to obliterate other marks. * * * The letter 'K' might also be read as the letter 'X' when the hair is long, or like it is on the public domain, like in Treasure or Rosebud counties, and particularly on the Froze-to-Death range. It would be very easy to make that mistake.'' Other expert witnesses for the defense gave testimony of similar import.

A judgment will not be reversed by this court merely because error was committed by the trial court, unless it is clear that the substantial rights of the defendant were prejudiced. (Sec. 9751, Rev. Codes 1921; *State* v. *Diedtman,* 58 Mont. 13, 190 Pac. 117; *Fowlie* v. *Cruse,* 52 Mont. 222, 157 Pac. 958; *State ex rel.* *Nipp* v. *District Court,* 46 Mont. 425, Ann. Cas. 1916B, 256, 128 Pac. 590; *Lane* v. *Bailey,* 29 Mont. 548, 75 Pac. 191.) Nor will a reversal be made where the error committed resulted in the defendant's favor. (*Steinbrenner* v. *Minot Auto Co.,* 56 Mont. 27, 180 Pac. 729.)

4. We are of opinion that the defendant's counsel was within her rights in interrupting the argument of the prosecuting attorney because of misstatement of facts vital to the defendant, and in asking to have an exception thereto. The bill of exceptions was properly settled later, without the presence of the jury, as by the statute provided. (Sec. 12044, Rev. Codes 1921.) Therefore the subject is correctly presented to us for review. (*State* v. *Biggerstaff,* 17 Mont. 510, 43 Pac. 709; *State* v. *Hurst,* 23 Mont. 484, 59 Pac. 911; *State* v. *Stevenson,* 26 Mont. 332, 67 Pac. 1001.) And while it does not affirmatively appear that the court ruled upon the objection made by the defendant, as indicated by the above authorities to be a prerequisite for a review by this court, yet the subject is fairly presented to us, and therefrom sufficient appears as to the trial court's attitude to indicate its views and the credence its expressions then made must have had upon the minds of the jury.

In his closing argument the county attorney stated that there was no evidence other than that of the defendant that

Boyd Shull (upon whom the defendant was attempting to shift the responsibility for the gathering and shipment of the horses in question) claimed to own the two grey geldings. The county attorney said: " * * * But I don't want you to forget what I am telling you. * * * This fellow Shull owned some horses, and he shipped them—there is the out— and when did we reach the climax? It was when they asked that man the question, 'Have you ever been convicted of a felony? The man said, 'Yes,' and they dropped it. * * * Just as soon as that question was asked, the defense absolutely blew up. * * * What was the reason? He had to have somebody to saddle it on to. The most convenient man in the community was the fellow who had once been in' the penitentiary. * * * That was the reason in the first instance of saying Shull claimed those horses. There isn't a word or syllable from anybody except Smart that is true—'' The defendant's counsel interposed objection and asked for an exception, and thereupon the court and counsel entered into the following colloquy in the presence of the jury.

"Mrs. Young: I want an exception—

"Court: You may dictate them without the hearing of the jury.

"Mrs. Young: There were exceptions to the argument, and I feel I have a right—

"Court: The court has ruled upon that. Now if you want to take exceptions, you can take them without the presence of the jury—not within the presence of the jury—the court has passed upon that.

"Mrs. Young: May I ask for a ruling touching upon the matter?

"Court: Your exception is no part of the record and shouldn't properly go before the jury.

"Mrs. Young: I would like to ask the court a question—

"Court: I am not entering into any argument—

"Mrs. Young: I would insist that I would be allowed to ask this one question. As the defense understands, it is within

[81 Mont. 145.]

the defense's right to stop an attorney in a case when he is misquoting the evidence, and, if there is a question in the court's mind, the defense has a right to have it read, and I was not allowed to have that record put before the jury.

"Court: The jury heard the testimony and the objections and the jury heard the court's ruling upon the objections and there will be no exceptions taken before the jury. If the jury is in doubt on any of the testimony, the court will have the testimony read to them.

"Mrs. Young: Your honor stopped me—

"Court: I am not entering into argument with defense counsel."

However, the record discloses positive testimony by a witness for the prosecution, Charlie O'Brien, from whom Shull had made purchase of some of the horses included in the shipment, that the two geldings in question were claimed by Shull. Such statement of counsel respecting the evidence in the case reflected primarily upon a vital question before the jury, namely who was in fact guilty of the larceny. It was made by the county attorney in his closing argument to a jury of ordinary [4a] citizens who must have been mentally exhausted and confused as to the evidence, due to the long hours the court required their attendance upon the trial, viz., from 8 in the morning until noon, when a recess was had until 1:15 P. M., from the last-mentioned hour until 6 P. M., and from 7:15 until 10 P. M. Under the circumstances, such a misstatement, unchallenged and uncorrected, was vital to the defendant's substantial rights. Such long court sessions are occasioned by judges at times in the interest of economy to the taxpayers, but in our view such attempted saving, however praiseworthy the motive may be, is more often productive of extravagance in the conduct of judicial proceedings. It is too much of a strain on both court and counsel, and distracting and confusing to the ordinary lay jury.

The record does not show that the court expressly indicated [5] its views or ruled that the county attorney was correct in

his statement of the evidence, yet such remarks were calculated to lead the jury (mentally fatigued as it must have been) to the conclusion that counsel for the defendant was in error as to the testimony introduced upon the trial. "It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury, to avoid prejudice to either party. (21 Ency. Pl. & Pr. 994, 995, and notes.)" (*Green* v. *State,* 97 Miss. 834, 53 South. 415; *Collins* v. *State,* 99 Miss. 47, Ann. Cas. 1913C, 1256, 54 South. 665; *People* v. *Frank,* 71 Cal. App. 575, 236 Pac. 189.) And it has been by this court held that any statement made by the court calculated to mislead the jury constitutes reversible error. (*State* v. *Tate,* 55 Mont. 343, 177 Pac. 243.)

It is manifest to us that the court was in error in not at once correcting counsel in his misstatement of the evidence on a question so vital to the defense, even though it became necessary to resort to an examination of the testimony as taken by the court stenographer. Prosecuting attorneys should be careful to confine themselves to the record in addressing a jury so as not to misstate important evidence to the prejudice of the substantial rights of a person charged with crime. He should be as fair and impartial as a trial judge, and, while it is his duty to present all the evidence against the accused and to use every legitimate means to secure a conviction when the evidence warrants it, it is equally his duty to protect from punishment one whose guilt cannot be established under the rules of procedure which the law prescribes. This duty is not performed if the minds of the jury are prejudiced by an

argument which seeks to inject into the case facts not proved by the testimony or a misstatement of material evidence produced upon the trial.

In *People* v. *Lee Chuck,* 78 Cal. 317, 20 Pac. 719, it is said: "Equally with the court, the district attorney, as the representative of law and justice, should be fair and impartial. He should remember that it is not his sole duty to convict, and that to use his official position to obtain a verdict by illegitimate and unfair means is to bring his office and the courts into distrust."

A bridle should be by the court put upon the tongue of an attorney promptly and firmly when in argument he misstates material evidence, either upon objection made thereto by opposing counsel or of its own motion. If zealous counsel cannot find sway for their eloquence within the record, they should not be permitted to enjoy such privilege to the prejudice of one charged with crime.

The defendant was entitled to a ruling by the court upon his objection made to the alleged misstatement of the evidence by the prosecuting attorney, and also to have been then and there accorded an exception noted in the record; although, as above indicated, the bill of exceptions was properly settled without the presence of the jury and after the conclusion of the trial. The court, upon the defendant's objection made, should have at once corrected counsel, thus removing from the jurors' minds any possible wrong impression detrimental to the defendant's substantial rights. The court failed to perform its duty to the defendant on trial by correcting the prosecuting attorney in his misstatement of such vital facts, in neglecting to admonish the jury to disregard such misstatement, in denying to the defendant the right to note an exception, and in refusing to permit the defendant to make a proper record in the presence of the jury from which to later have his bill of exceptions settled. In our opinion, this constituted reversible error.

Accordingly the judgment is reversed and the cause is remanded to the district court of Treasure county for a retrial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.

---

## ON MOTION FOR REHEARING.

(Decided December 31, 1927.)

MR. JUSTICE GALEN delivered the opinion of the court.

On motion for a rehearing the attorney general complains of the court's decision because of its failure to adhere to [6] record facts. He points out that a referee was by this court appointed to settle a bill of exceptions in this case, and that as shown by the report of the referee, certain evidence was presented to him, not contained in the bill of exceptions as settled by the court. Such evidence constitutes no part of the record, and cannot be by us considered, since the referee's report, recommending the acceptance of the record which had been theretofore regularly certified by the trial court as true and correct, was by this court adopted.

This court must decide every case on the transcript certified by the trial court to be correct, and it cannot consider matters not shown by the record. Our rules for amendment of transcripts before decision are liberal, and there is no excuse for failure to present a proper record. Manifestly, it is too late on motion for a rehearing to present for consideration a different record from that considered in disposing of the case by written opinion on appeal. The practice is settled. (*Griffith* v. *Montana W. G. Assn.*, 75 Mont. 466, 244 Pac. 277.)

It appearing that there is no merit in the attorney general's position, the motion for a rehearing is denied.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.