STATE, Respondent, *v.* NEIDAMIER, Appellant.

(No. 7,327.)

(Submitted November 8, 1934. Decided November 17, 1934.)

[37 Pac. (2d) 670.]

*Mr. David J. Ryan*, for Appellant, submitted a brief.

*Mr. Raymond T. Nagle*, Attorney General, and *Mr. Enor K. Matson*, Assistant Attorney General, for the State, submitted a brief; *Mr. Matson* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

An information was filed in the district court of Cascade county against the defendant on December 12, 1933, in two counts—the first charging him with the unlawful sale of morphine sulphate; the second charging the unlawful possession of that drug. The latter count was on motion of the county attorney dismissed. The defendant entered a plea of not guilty to the first count, was tried and convicted. Judgment was entered imposing a sentence of fine and imprisonment.

A motion for new trial was made, heard, and denied. The appeal is from the judgment and the order denying defendant's motion for a new trial.

The defendant resided in a stone house at 321 Second Avenue South, about a block and a half from the police station in Great Falls. About midnight on December 5, 1933, Charles L. Sheridan, chief of police of Great Falls, sent John Todd to the residence of the defendant for the purpose of buying narcotics. Todd was on the eligible list for appointment to the police department of Great Falls, but had never been appointed as a probationary or regular policeman, although during the two years preceding that date he had,

from time to time, performed services under special appointment as a police officer. Sheridan gave Todd two marked silver dollars with which to make the purchase. Bound for defendant's residence, Todd, followed by Sergeant Anderson a distance of from thirty to forty feet, left the police station. Todd testified that he knocked at the door, which was opened by the defendant, and told defendant that the latter's friend, one Lee Kennedy, was in jail, that he was sick, and that he (Todd) desired a couple of capsules of "M," meaning morphine. Kennedy admitted on the stand that he was a drug addict. This pretext in order to effect the purchase had been suggested by the chief of police. Defendant invited Todd to enter and told him to wait. After going out of doors, defendant returned in a few minutes, bringing two capsules or bindles wrapped in tinfoil. He removed the tinfoil, leaving it on the table, and gave the capsules to Todd in exchange for the two marked silver dollars. Todd left the residence and on leaving tipped his hat, which was a prearranged signal to Officer Anderson, who was in waiting in close proximity, that Todd had been successful in making the purchase. Todd and Anderson returned to the police station, where Todd delivered the two capsules to the chief of police, who placed them in a sealed envelope and put them under lock. Later these capsules were delivered to a chemist who analyzed a small portion of the contents of each, and testified that they contained morphine sulphate.

As soon as the chief of police had received the capsules and locked them up, he, together with Sergeant Anderson, Lieutenant Semingsen and Todd, returned to defendant's residence. Defendant was arrested and the interior of the house searched. Various articles were found, among them being the piece of tinfoil on the table testified to by Todd, and a box of empty capsules similar to those delivered by Todd to the chief of police. The defendant was searched in an effort to locate the two marked silver dollars at the time of his arrest, which was from five to ten minutes after the purchase was made by Todd. Although defendant had $45 in bills on his person

and some change in silver, he had no silver dollars, and they were not found. In addition to the articles above enumerated, a hypodermic needle, spoon, and eye-dropper were likewise found in the house. As the officers approached defendant's residence for the purpose of making the arrest, one Jean Brown, a known drug addict, came to the shack, as did two other women, known addicts, while the search was in progress. The various articles above mentioned and others were retained by the police. Following the arrest and search, the defendant was lodged in the city jail, and again the police officers returned to the residence of defendant, where further search was made and certain other articles were found. The state offered in evidence all the various articles found. The court admitted the two capsules which Todd testified he had purchased from the defendant, the tinfoil found on the table, and the box of empty capsules found in defendant's residence. The court sustained defendant's objection as to the admission of the other articles.

Defendant denied that he sold the capsules to Todd. A number of witnesses testified as to his good reputation for honesty, integrity, and as being a law-abiding citizen. The sheriff of the county testified contradicting the testimony of these witnesses.

Numerous specifications of error are found in the brief, many of which are not argued. The arrest was made without a warrant, and the search was likewise made without a search-warrant. The defendant argues and contends that his arrest was unlawful, that, since the arrest was unlawful, the search was unlawful, and therefore none of the articles obtained by the search should have been received in evidence over his motion to suppress, made during the progress of the trial.

This court has repeatedly had under consideration the question as to when an officer may arrest without a warrant. In the case of *State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634, it is written: "Whatever else may be said upon that subject, the utmost that can be exacted of the officer who arrests without a warrant is that the circumstances shall be such that

upon them alone he would be justified in making a complaint upon which a warrant might issue. In other words, if the circumstances are such that the officer could properly secure a warrant of arrest, he may arrest without a warrant if the offense which the circumstances tend to establish was committed in his presence; and it is settled in this jurisdiction that the officer need not have actual, personal knowledge of the facts which constitute the offense in order to be able to make complaint and secure a warrant. The question was settled in *State* v. *McCaffery*, 16 Mont. 33, 40 Pac. 63, wherein the court said: 'It seems to us that the proper construction of the words "probable cause," as used in the Constitution, may be facts embodied in a complaint which charges the offense upon information and belief.' The doctrine of that case was expressly approved in *State* v. *Shafer*, 26 Mont. 11, 66 Pac. 463.'' This statement was quoted with approval in the case of *State* v. *Hum Quock*, 89 Mont. 503, 300 Pac. 220.

Where an arrest is made lawfully, the person arresting may take from the possession of the arrestee any articles which may reasonably be of use on the trial. (*State* v. *Hum Quock*, supra; *State ex rel. Neville* v. *Mullen*, supra; *State ex rel. Kuhr* v. *District Court*, 82 Mont. 515, 268 Pac. 501.) In the case of *State ex rel. Samlin* v. *District Court*, 59 Mont. 600, 198 Pac. 362, 366, it was said: "It is well settled that articles wrongfully taken from one accused of crime may be used as evidence against him upon the trial, though objection is made that the prosecution obtained possession of them unlawfully. If they are in other respects competent and material, the trial court will not pause to inquire by what means they came into the possession of the prosecution."

In *State* v. *Gardner*, 77 Mont. 8, 249 Pac. 574, 577, 52 A. L. R. 454, this court used the following language: "The right of the state to introduce the evidence must be determined on the hearing on motion to suppress. (*State ex rel. Samlin* v. *District Court*, 59 Mont. 600, 198 Pac. 362; *State* v. *Rice*, 73 Mont. 272, 235 Pac. 716; *State* v. *Gotta*, 71 Mont. 288, 229 Pac. 405; *State* v. *McDaniels*, 75 Mont. 61, 243 Pac. 810.)

The burden of establishing irregularity is on the movant. (*State ex rel. Brown* v. *District Court,* 72 Mont. 213, 232 Pac. 201; *State ex rel. Hansen* v. *District Court,* 72 Mont. 245, 233 Pac. 126; *State* v. *Ladue,* 73 Mont. 535, 237 Pac. 495.)''

In the light of these authorities, the contentions of defendant adverted to supra are without merit.

It is urged that it was error to admit evidence of possession ▮ of these various articles, in view of the fact that the defendant was charged only with the sale. This court in the case of *State* v. *Wong Fong,* 75 Mont. 81, 241 Pac. 1072, 1074, said: '' 'Articles which are shown by the evidence to be connected with the crime, or which serve to unfold or explain it, may be accepted in evidence, provided they are properly identified,' and provided there has been 'no substantial change' in them. (*State* v. *Byrne,* 60 Mont. 317, 199 Pac. 262; 16 C. J. 618.)''

Error is assigned on the part of the court in permitting the ▮ state to make the offer of the excluded exhibits and in admitting testimony offered to identify them. During the progress of the trial and immediately following the exclusion of these exhibits, the court admonished the jury as follows: ''Gentlemen, you will be admonished by the court before the case goes to the jury, that any proposed evidence that is offered, when the offer is rejected, is to be disregarded by you. This applies to any of the proposed exhibits about which testimony has been had, objection to the reception of which has been sustained by the court. I want to admonish you now, while fresh in your mind, that you are to disregard the offer of any exhibits objection to which was sustained and which were not received in evidence.'' And, as a part of its instructions to the jury, the court gave the following: ''You are instructed that in arriving at your verdict in this case you must disregard any testimony or exhibits offered in evidence to which objection was sustained by the court.'' Thus the court carefully guarded the rights of the defendant, and he was in no manner prejudiced in his substantial rights. No error resulted. (*State* v. *Smart,* 81 Mont. 145, 262 Pac. 158.)

Errors are assigned on the giving of certain instructions by the court. No objections are found in the record to the giving of any of the instructions of which complaint is made. In the absence of proper objections, this court is powerless to reverse the judgment for alleged error in the giving of instructions. (Sec. 11969, Rev. Codes 1921; *State* v. *Brodock,* 53 Mont. 463, 164 Pac. 658.)

Error is likewise urged upon the court's refusal to give defendant's offered instructions. Of these instructions, one is found in the identical language of one among the court's instructions. As to the others, with one exception, the court at the time of the settlement of the instructions ruled that they were given in substance, and for that reason refused to give them verbatim. Counsel has failed to argue any of these various specifications of error in his brief. We have carefully examined these refused instructions and the instructions of the court, and find that they were in fact given in substance, and the principles of law which the defendants sought to invoke in these offered instructions were fully covered in the court's instruction to the jury.

Another instruction was refused, wherein it was sought to advise the jury respecting the consideration and weight to be given the testimony of public officers or paid detectives who were employed to secure evidence against the defendant. The jury was fully instructed as to the weight and credibility to be given to the testimony of all witnesses, and there was no error in the refusal to give the requested instruction. (*State* v. *Marchindo,* 65 Mont. 431, 211 Pac. 1093, and cases there cited.)

It is argued that the evidence is insufficient to support the verdict in general. Ample evidence was produced on behalf of the state, if believed by the jury, as it was, to support a conviction of the defendant.

Finding no reversible error in the record, we affirm the judgment and the order denying defendant a new trial.

Mr. Chief Justice Callaway and Associate Justices Angstman, Matthews and Stewart concur.