STATE EX REL. WONG YOU, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,798.)

(Submitted March 7, 1938. Decided March 15, 1938.)

[78 Pac. (2d) 353.]

348

Messrs. *Rockwood Brown & Horace S. Davis, Mr. Melvin N. Hoiness* and *Mr. Franklin S. Longan,* for Relator, submitted a brief; *Mr. Hoiness* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. George S. Smith,* County Attorney of Yellowstone County, for Respondents, submitted a brief; *Mr. Smith* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding by which a writ of prohibition is sought against the district court of Yellowstone county, the presiding judge thereof, and the county attorney of that county.

Relator was accused by information with the commission of a misdemeanor (violation of the lottery law). The defendant made a timely motion to suppress certain evidence obtained as

a result of a search and seizure by a policeman of the city of Billings without a warrant, which, after hearing, was denied by the court. A bill of exceptions was settled containing all of the proceedings occurring at the hearing of this motion. By this proceeding it is sought to restrain the court from using all of the evidence acquired as a result of the search and seizure, upon the trial of the relator under the offense charged in the information. The respondents have filed a motion to quash the alternative writ heretofore issued out of this court.

Angelo Ferro, a policeman of the city of Billings, was informed by another policeman that Clyde Baker, a colored boy, was selling lottery tickets. Ferro inquired of Baker if he was selling lottery tickets, who informed the officer that he was selling punches on a punchboard and giving away lottery tickets to the purchasers. At the request of Ferro, Baker exhibited some of the lottery tickets which Ferro retained. Baker informed Ferro that the lottery was in "Chinese Alley," and offered to take the policeman to the location of the lottery. When they arrived there, Baker opened the door and, pointing to relator, said: "There is the man running it." An attempt to verify the statement by relator brought no response. The policeman then said to relator, "Where is your lottery at?" Relator pointed to a stairway, and leading the way, was followed by Ferro. As they descended the stairs, the relator began speaking in the Chinese language. When they arrived on the basement floor the policeman saw another Chinaman who was attempting to conceal some lottery tickets. Ferro took these tickets away from the second Chinaman and inquired as to the location of the rest of the lottery. The latter took the policeman into another room where he turned on a light, and where there was located a lottery cage on which a license to operate a punchboard, to which the Chinaman pointed, was exhibited. The policeman searched the cage and found some more lottery tickets, a home-made punchboard, and a punch. The officer retained these articles of property. He then, together with the second Chinaman, returned to the first floor of the building, where he found the relator. The officer inquired who was in

charge, and relator said he was. The arrest of relator followed. The policeman had neither a search warrant nor a warrant of arrest.

The room which the policeman and the colored boy first entered contained the usual laundry equipment, including some clothing. In support of this motion to suppress the relator filed an affidavit in which he referred to the premises searched as the "home or premises" of relator. The policeman testified that he saw no evidence of sleeping or living quarters on either the floor where the laundry was located or in the basement. The building had a second story, which the policeman did not enter.

It is the contention of relator that the search of the premises, the arrest of relator, and the seizure of the articles of property were in violation of the rights guaranteed to him by sections 7 and 18 of Article III of the Constitution, therefore unlawful, and hence the motion to suppress the evidence should have been sustained.

When an arrest is lawfully made, the person arresting may take from the possession of the arrestee articles of property which reasonably would be of use on the trial. (*State* v. *Neidamier,* 98 Mont. 124, 37 Pac. (2d) 670; *State* v. *Hum Quock,* 89 Mont. 503, 300 Pac. 220; *State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634, 636; *State ex rel. Kuhr* v. *District Court,* 82 Mont. 515, 268 Pac. 501.)

The right of the state to introduce evidence secured by an officer while making an arrest or a search must be determined on the hearing of a motion to suppress. (*State* v. *Gardner,* 77 Mont. 8, 249 Pac. 574, 52 A. L. R. 454; *State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362; *State* v. *Rice,* 73 Mont. 272, 235 Pac. 716; *State* v. *Gotta,* 71 Mont. 288, 229 Pac. 405; *State* v. *McDaniels,* 75 Mont. 61, 243 Pac. 810; *State* v. *Neidamier,* supra.) The burden of establishing the irregularity of the seizure is on the movent. (*State ex rel. Hansen* v. *District Court,* 72 Mont. 245, 233 Pac. 126; *State* v. *Ladue,* 73 Mont. 535, 237 Pac. 495; *State* v. *Gardner,* supra; *State* v. *Neidamier,* supra.)

The court has defined the right of an officer to arrest without a warrant, in the case of *State ex rel. Neville* v. *Mullen,* supra, as follows: "Whatever else may be said upon that subject, the utmost that can be exacted of the officer who arrests without a warrant is that the circumstances shall be such that upon them alone he would be justified in making a complaint upon which a warrant might issue. In other words, if the circumstances are such that the officer could properly secure a warrant of arrest, he may arrest without a warrant if the offense which the circumstances tend to establish was committed in his presence; and it is settled in this jurisdiction that the officer need not have actual, personal knowledge of the facts which constitute the offense in order to be able to make complaint and secure a warrant. The question was settled in *State* v. *McCaffery,* 16 Mont. 33, 40 Pac. 63, wherein the court said: 'It seems to us that the proper construction of the words "probable cause," as used in the Constitution, may be facts embodied in a complaint which charges the offense upon information and belief.' The doctrine of that case was expressly approved in *State* v. *Shafer,* 26 Mont. 11, 66 Pac. 463.'' We approved this statement in the case of *State* v. *Neidamier,* supra.

An officer may make a search and seizure without a warrant when he has probable cause to believe that an offense is being committed. (*State ex rel. Brown* v. *District Court,* 72 Mont. 213, 232 Pac. 201; *State* v. *Ladue,* supra.)

In *State ex rel. Neville* v. *Mullen,* supra, this court said: "Reverting to our premise that the sheriff may arrest without a warrant upon such state of facts as would justify the issuance of a warrant, it becomes necessary to consider what circumstances will justify the issuance of a warrant, and the authorities are unanimous in holding that there must be probable cause. The terms 'probable cause' are variously defined, but an analysis of the definitions will disclose that the difference, if any, is in the mode of expression, rather than in the substance. 'Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner

complained of.' (*Burt* v. *Smith*, 181 N. Y. 1, 73 N. E. 495, 2 Ann. Cas. 576.) 'Probable cause [for a criminal prosecution] is, in effect, the concurrence of the belief of guilt with the existence of facts and circumstances reasonably warranting the belief.' (*Runo* v. *Williams*, 162 Cal. 444, 122 Pac. 1082.) It is not essential to probable cause 'for an arrest * * * that the accuser believe that he has sufficient evidence to procure a conviction.' (*Michael* v. *Matson*, 81 Kan. 360, 105 Pac. 537, L. R. A. 1915D, 1.) 'Probable cause does not depend on the actual state of the case in point of fact, for there may be probable cause for commencing a criminal prosecution against a party, although subsequent developments may show his absolute innocence.' (*Mundal* v. *Minneapolis & St. L. R. Co.*, 92 Minn. 26, 99 N. W. 273 [100 N. W. 363].) 'The expression "probable cause," as used in the federal Constitution, referring to the issuance of warrants, means that there is a probability that a crime has been committed by the person named in the warrant.' (*Ex parte Heacock*, 8 Cal. App. 420, 97 Pac. 77.)

"In *Burt* v. *Smith* above, the New York court said: 'One may act upon what appears to be true, even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable. Belief alone, however sincere, is not sufficient, for it must be founded on circumstances which make the belief reasonable.' The same rule as applied to an arrest without warrant is stated in 5 C. J. 417, as follows: 'The reasonable and probable grounds that will justify an officer in arresting without a warrant one whom he suspects of felony must be such as would actuate a reasonable man acting in good faith. The rule is substantially the same as that in regard to probable cause in actions for malicious prosecution, and there is no difference in its application between arrests for felonies and arrests for misdemeanors. The necessary elements of the grounds of suspicion are that the officer acts upon a belief in the person's guilt, based either upon facts or circumstances within the officer's own knowledge, or upon information imparted to him by reliable and credible third per-

sons, provided there are no circumstances known to the officer sufficient to materially impeach the information received. It is not every idle and unreasonable charge which will justify an arrest. An arrest without a warrant is illegal when it is made upon mere suspicion or belief, unsupported by facts, circumstances, or credible information calculated to produce such suspicion or belief.' (See, also, 3 Words and Phrases, Second Series, 1224 et seq.) ''

An arrest made without a warrant, and likewise a search and seizure without a warrant, is illegal and, therefore, unreasonable when it is made upon mere suspicion or belief unsupported by facts, circumstances, or credible information calculated to produce such belief. (*State ex rel. Sadler* v. *District Court*, 70 Mont. 378, 225 Pac. 1000.)

Applying the rules of these decisions to the facts and circum- stances of this case, did the policeman have probable cause to believe that a public offense was being committed? He was first informed that Baker, the colored boy, was selling lottery tickets. Baker, in answer to inquiry by the officer, informed him as to the manner of disposing of the lottery tickets and the place where the lottery was being conducted. He delivered lottery tickets to the officer, guided the officer to the location of the lottery, and pointed out the relator as the man who was running the lottery. These facts and circumstances were such as to produce in the mind of a prudent and cautious man the belief that a lottery was being conducted on the premises of relator; therefore, probable cause existed for the search, seizure and arrest.

The motion to suppress was properly denied. The motion to quash is sustained and the proceeding ordered dismissed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

Rehearing denied April 19, 1938.